14876

MARCHBANKS v. DUKE POWER CO. *ET AL.*

(2 S. E. (2d), 825)

338

344

348

354

*Mr. W. E. Bowen,* for appellant,

*Messrs. Haynsworth & Haynsworth,* for respondent,

May 9, 1939.

The opinion of the Court was delivered by MR. JUSTICE BONHAM.

This action was brought in the Court of Common Pleas for Greenville County to recover damages for injuries received by plaintiff while engaged in painting a pole, the property of Duke Power Company, a corporation, which is extensively engaged in the business of generating, transmitting, selling and furnishing electricity for lighting, heating, and for domestic and industrial purposes. In the accomplishment of these purposes, or some of them, it has erected and maintains in the City of Greenville numerous poles and transmission lines. It finds it necessary, in order to keep them in proper repair for use, to have them painted at certain intervals. It appears from the pleadings and stipulations embodied in the record, that the Power Company entered into a contract with one W. O. Coln, by which the latter undertook to paint 170 of these metal poles at the price of $1.00 per pole, the power company to furnish the paint, etc. Coln employed the plaintiff, who is a competent painter, to do the work. While employed at this work, he came in contact with a wire, which he alleges in his complaint was defectively installed and was heavily charged with electricity, and he suffered severe injuries.

He brought action against Duke Power Company and W. O. Coln. The complaint contains the allegation that W. O. Coln was doing this work of painting the poles, as an independent contractor and that the plaintiff was in his employ as his agent and servant.

The defendant, Duke Power Company, which for brevity we shall call the company, set up, by way of answer, a gen-

eral denial, contributory negligence on the part of plaintiff, that defendant accepted the provisions of the Act of the General Assembly of South Carolina, Act No. 610 of the Statutes of 1936, 39 St. at Large, p. 1231, and with the approval of the Industrial Commission became a carrier of its own insurance thereunder; that the said Act, known as the Workmen's Compensation Act, furnishes plaintiff his sole and exclusive remedy for the injuries he may have suffered and the defendant is not liable to plaintiff on the cause of action stated in the complaint.

The plaintiff demurred to the answer on the grounds that at the time of his injuries plaintiff was in the employ of W. O. Coln and engaged about the business of the said Coln, who was an independent contractor with reference to Duke Power Company, and plaintiff was not an agent or servant of Duke Power Company; that the painting of the posts is not a part of the "trade, business or occupation" of Duke Power Company.

Before the case came to trial before Judge Oxner, the parties agreed upon a settlement to the effect that if it was found that the plaintiff had the right to maintain this action, "and such settlement could be made as would fully release the defendants from all liability, if any, of whatever nature either at common law or under the Workmen's Compensation Act," the Court shall not only sustain plaintiff's demurrer, but shall render judgment for plaintiff in the sum of $7,000.00; otherwise the complaint shall be dismissed. To determine this question the parties entered into a written stipulation, the principal features of which are thus stated in the record: "1. That the parties to this action have agreed upon a settlement provided it is found (1) that plaintiff has the right to maintain said action and (2) that such settlement will completely and forever bar any further claim by said plaintiff, or, in the event of his death any further or additional claim by his dependents or personal representatives either at common law or under the Workmen's Com-

pensation Act. That the parties hereto will submit these questions to the Court for determination, said issues being substantially raised by plaintiff's demurrer to the defendant's third defense. If the Court finds that the plaintiff has the right to maintain said action, and that such settlement will bar all further claims, as above described, it is agreed that the Court shall not only sustain plaintiff's demurrer but that an order for judgment shall be rendered in favor of the plaintiff in the sum of Seven Thousand ($7,000.00) Dollars in said action. If the Court answers the above questions in the negative, then an order shall be issued dismissing and ending this action and that claim will then be submitted by the plaintiff under the Workmen's Compensation Act."

The matter was fully and ably argued before Judge Oxner, who, on January 26, 1939, filed his order which holds that plaintiff cannot maintain this action. He therefore dismissed the complaint without prejudice to the right of the plaintiff to claim under the Workmen's Compensation Act.

The plaintiff appeals from this order upon ten exceptions and assignments of error, but not so many questions are thereby made for our determination. We shall consider all of them and decide those which, in our judgment, are determinative of the issues involved.

Counsel for both parties have filed able briefs and arguments.

Judge Oxner in his order, or decree, stated this: "The only question, therefore, for determination by me is whether or not plaintiff's claim for damages * * * comes within the terms of the Workmen's Compensation Act. The portion of the Act in controversy is as follows: * * *."

He then sets out Section 19 of the Act. For convenience, we reproduce the applicable portions of Section 19 of the Act:

"(a) Where any person (in this section referred to as 'owner'), undertakes to perform or execute any work which

is a part of his trade, business or occupation and contracts with any other person (in this section referred to as 'subcontractor') for the execution or performance by or under such subcontractor of the whole or any part of the work undertaken by such owner, the owner shall be laible to pay to any workman employed in the work any compensation under this Act which he would have been liable to pay if the workman had been immediately employed by him.

"Where any person (in this section referred to as 'contractor') contracts to perform or execute any work for another person, which work or undertaking is not a part of the trade, business or occupation of such other person and contracts with any other person (in this section referred to as 'subcontractor') for the execution or performance by or under the subcontractor of the whole or any part of the work undertaken by such contractor, then the contractor shall be liable to pay to any workman employed in the work any compensation under this Act which he would have been liable to pay if that workman had been immediately employed by him."

The whole appeal presents to us these questions:

What was the intent of the Legislature in passing the Workmen's Compensation Act?

What is the proper interpretation of Section 19 of the Act?

Is one whose claim brings him within the provisions of that Act, confined to that remedy or may he bring action under the common law for damages?

Is the Act unconstitutional?

At the time of his injury, was the work in which plaintiff was engaged the work of Duke Power Company which it was undertaking to perform, or which it was undertaking to have performed, "a part of its trade, business or occupation"?

In the case of *Rudd v. Fairforest Finishing Co.,* 189 S. C., 188, 200 S. E., 727, 728, Mr. Justice Fishburne, for the Court, said:

"The governing principles find general concurrence in other jurisdictions. See note in Ann. Cas., 1918-B, 647.

"Compensation laws should be given a liberal construction in furtherance of the beneficent purpose for which they were enacted, and if possible, so as to avoid incongruous or harsh results. *Baltimore & Philadelphia Steamboat Company v. Norton,* 284 U. S., 408, 414, 52 S. Ct., 187, 189, 76 L. Ed., 366."

Counsel for both parties have gone extensively into the consideration of the compensation acts of other states, and the citation of authorities of the decisions of the Courts of other states in the exposition thereof. The large majority of the states have workmen's compensation acts; some of them have features similar to ours, but we find it impossible to deduce from all of them, and the many authorities cited, a rule general in its application. In the case of *Fox v. Fafnir Bearing Co.,* 107 Conn., 189, 139 A., 778, 779, 58 A. L. R., 861, we find this expressive utterance: "No general rule is deducible from the authorities, and it is often a matter of extreme difficulty to decide whether the work in a given case falls within the designation of the statute. It is in each case largely a question of degree and of fact, and it was with that in mind doubtless that in *Manton v. Cantwell, supra,* the Lord Chancellor said that it was 'neither convenient nor proper to travel beyond the facts of a particular case to lay down general rules to govern cases which may or may not arise hereafter.' The decision was not difficult in the *Pulambo* [*Pallumbo v. George A. Fuller Co.,* 99 Conn., 353, 122 A., 63] and *Pallanck* [*Pallanck v. Donovan,* 105 Conn., 591, 136 A., 471] *cases* which we have cited."

After all, we are governed by the Act of our own State. It behooves us then to consider it and determine what that Act means, and to that end we

must determine the intent of the Legislature, as it is disclosed by the language used in the Act. It is our task to discover the sense in which the words were used when the section was passed.

"In construing a statute, effect should be given to manifest intention of Legislature." Second syllabus in *Fulghum v. Bleakley*, 177 S. C., 286, 181 S. E., 30.

"The Workmen's Compensation Act was adopted to protect industrial workers against the hazards of their employment, and to cast upon the industry in which they are employed a share of the burden resulting from industrial accidents." *Walters v. Eagle Indemnity Co.*, 166 Tenn., 383, 61 S. W., 2d, 666, 667, 88 A. L. R., 654; citing *Partee v. Memphis Concrete Pipe Co.*, 155 Tenn., 441, 444, 295 S. W., 68.

The elaborate and able argument of counsel for appellant seemed to find unnecessary ambiguities in the Workmen's Compensation Act for this State. In the first paragraph of Section 19 of the Act, which is that with which we are chiefly concerned, it does not appear to us that the intent of the Legislature in making the law, and its purpose, are hidden under verbose language, but is couched in plain language not hard to understand. It is in these words: "Where any person (in this section referred to as 'owner'), undertakes to perform or execute any work which is a part of his trade, business or occupation and contracts with any other person (in this section referred to as 'subcontractor') for the execution or performance by or under such subcontractor of the whole or any part of the work undertaken by such owner, the owner shall be liable to pay to any workman employed in the work any compensation under this Act which he would have been liable to pay if the workman had been immediately employed by him."

To us the plain interpretation of this language is that the law-makers intended the term "owner" to be synonymous with the principal contractor, that is

to say the party of the first part to the contract with the "subcontractor" who is the second party to the contract for the execution or performance of the work to be done by the owner. The primary purpose of a workmen's compensation act is to protect the workman who actually does the work. It is easily conceivable that a contractor or subcontractor other than the owner may let a part of the work to be done to others who are financially irresponsible, and that the employee of such contractor or subcontractor who is injured while doing the work is left without remedy. It is the clear purpose of the Act to make the "owner," the person who is interested in having the work done, liable to the employee so injured.

We shall not cite the many authorities from other jurisdictions which might be presented in support of this view. This is our construction of our own Act, which we hold to be supported by logic and reason.

Does this interpretation of our statute deprive an injured employee of his right to sue for damages under the common law?

If the facts bring the case within the terms of the ▇▇ Compensation Act, the employee is restricted to his right of claim for compensation under the Act. The very purpose of the Act is to assure the employee of redress for his injuries, if the facts show that he is entitled thereto, and to relieve him of the uncertainties of a trial in a suit for damages.

"The right to workmen's compensation is wholly statutory, not existing except under the circumstances provided in the Workmen's Compensation Acts. It is not a common law right for the reason that the Acts are in derogation of, or departures from, the common law, and are not amendatory, cumulative or supplemental thereto, nor declaratory thereof, but wholly substitutional in character; * * *." 71 C. J., pages 229-231.

"The compensation acts, as was well said in one of the earlier opinions on the constitutional questions involved, form a legislative response to an emphatic, if not peremptory, public demand that a system be afforded whereby employers and employed might escape from personal injury litigation, and every employee not guilty of wilful misconduct might receive at once a reasonable recompense for injuries accidentally received in his employment under certain fixed rules and without friction. The principles of the common law, governing the right of an employee to recover against his employer for personal injuries, are the outgrowth of the conditions surrounding the small shop and the use of simple or no machinery, and its remedies are regarded as failing to give to injured employees relief adequate or suited to, and commensurate with, modern conditions, * * *." 71 C. J., 242 et seq.

Section 10 of our Act provides that the employer shall be liable only when he elects to come in under the Act.

Section 11 provides that: "The rights and remedies herein granted to an employee where he and his employer have accepted the provisions of this Act, respectively, to pay and accept compensation on account of personal injury or death by accident, shall exclude all other rights and remedies of such employees, his personal representative, parents, dependents or next of kin, as against employer at common law, or otherwise, on account of such injury, loss of service, or death: * * *."

In his exceptions to the Circuit Judge's order the appellant suggests that there was error on the part of the Circuit Judge in not holding that such an interpretation of Section 19 of the Workmen's Compensation Act as would make the "owner" liable for injuries suffered by the employee of an independent contractor would render the Act unconstitutional.

We do not think it may rightly be held that the Circuit decree holds that the owner is liable, under Section 19 of the

Act, for injuries suffered by employees of an independent contractor. If, however, such holding may be deduced from any language in the decree, it works no harm to the appellant. This Court distinctly holds in this opinion that the question of independent contractor does not arise in this case; therefore, the question of the constitutionality of the Act as suggested by the appellant need not be considered.

The exceptions challenge the correctness of the holding that the appellant, when injured, was engaged in work which "is a part of the trade, business or occupation" of the defendant Duke Power Company.

We think that appellant is hardly in position to raise this issue. The statements of its complaint would seem to preclude it from doing so. Paragraph II thereof sets forth the following: "That the defendant, Duke Power Company, for compensation, furnishes to the City of Greenville electricity for lighting and power purposes, operates for hire in the City of Greenville and surrounding vicinity busses propelled by electricity transmitted by it, and, for compensation, furnishes to private citizens and corporations electricity for lighting and other purposes in and about the City of Greenville; that, *in order to carry on its business as dispenser and vender of electricity as aforesaid, and for the operation of its electric busses as hereinabove stated, it is necessary for the said defendant corporation to construct and maintain many wires over which electric current is transmitted,* many of which wires carry high voltage; that, at regular intervals, by and alongside the principal streets of the City of Greenville, the defendant corporation has erected metal posts to which said wires are attached; that *in order to protect said posts from the weather and to give a more pleasing appearance thereto, the defendant corporation has, from time to time, caused said posts to be painted."* (Italics added.)

If this language of the complaint be true, and the appellant may not deny it, it is difficult to see how the power company could carry on its business if its

lines of wires were not kept in sound condition, or how this could be done if the posts to which they are attached were not kept in safe and sound condition. Evidently it was necessary to this end that the poles be "protected from the weather," and the appellant was engaged about this work. He was employed by Coln to do it, and Coln had been employed by the power company. Surely it cannot be seriously argued that the unfortunate employee was not engaged in work "which is a part of the trade, business or occupation" of the power company which it was undertaking to have performed.

The answer sets up this defense in Paragraph III: "That as a part of its trade, business, or occupation it is necessary for the defendant to maintain its equipment including poles and transmission lines, all of such maintenance, with the exception of an occasional painting, being performed by its own employees as a part of its regular business. That the painting of said poles was a necessary and proper part of its business of transmitting and selling electricity."

Moreover, the stipulation set out in the record contains this statement: "The facts in the case are set forth by the admissions in the defendant's answer of certain allegations in the complaint and the admissions as to the truth of the allegations contained in the defendants' third defense by reason of defendants' demurrer thereto, * * *."

We do not think it is necessary to add anything to the authorities cited in the Circuit decree on this point. The contention is without merit.

An exception charges error in the Circuit decree which finds as follows: "No particular skill or special equipment was necessary to paint these poles."

What reference to the issues involved in this case has the reported language of the Circuit Judge? We see none; such finding did appellant no harm.

This is a case of novel impression in this jurisdiction. It is one of much importance. The Circuit decree goes more

fully into the elaboration of the authorities than does this opinion, and it will be of especial interest to the profession. Let it be reported.

Judgment affirmed.

MR. CHIEF JUSTICE STABLER and MESSRS. JUSTICES BAKER and FISHBURNE and MR. ACTING ASSOCIATE JUSTICE L. D. LIDE concur.

MR. JUSTICE CARTER did not participate on account of illness.