## BERRY v. ATLANTIC GREYHOUND LINES, Inc.

### No. 4631.

Circuit Court of Appeals, Fourth Circuit.

Aug. 30, 1940.

Arthur Rittenberg and J. C. Long, both of Charleston, S. C., for appellant.

N. A. Turner, of Columbia, S. C., and J. Waties Waring, of Charleston, S. C. (Ashley C. Tobias, Jr., and J. Laurens Mills. both of Columbia, S. C., and Waring & Brockinton, of Charleston, S. C., on the brief), for appellee.

Before SOPER and DOBIE. Circuit Judges, and CHESNUT, District Judge.

DOBIE, Circuit Judge.

This was an action at common law in the United States District Court for the Eastern District of South Carolina, for personal injuries sustained by J. L. Berry (plaintiff-appellant, hereinafter called Berry), as a result, it is claimed, of the explosion of the engine on a bus owned and operated by the Atlantic Greyhound Lines, Inc. (defendant-appellee, hereinafter called Greyhound). Berry alleged that this explosion was caused by the negligence of Greyhound in starting the engine.

It was stipulated and agreed by counsel for both parties as follows:

"That on or about April 15, 1937, a large passenger bus of the Defendant, Atlantic Greyhound Lines, while en route to Walterboro, South Carolina, accidentally broke down and that the said bus was towed or pulled into Walterboro, thereupon the driver of the bus called upon the Breland Chevrolet Company to repair the bus and the Breland Chevrolet Company sent the plaintiff, J. L. Berry, to repair the bus. The Plaintiff was an employee of the Breland Chevrolet Company, who operated a garage in Walterboro. After the Plaintiff commenced working on the bus a terrific explosion took place in the engine, and the Plaintiff was thereby seriously injured.

"It is admitted that the Breland Chevrolet Company carried workmen's compensation insurance, under the South Carolina Workmen's Compensation Law, covering its employees. It is also admitted that the Atlantic Greyhound Lines had accepted and qualified under the provisions of the South Carolina Workmen's Compensation Act.

"The Plaintiff claims that the explosion resulting in his injuries was due to the negligence, recklessness, and wilfulness of the Defendant, the Atlantic Greyhound Lines. The Defendant denies this, but asserts that even if the explosion was due to its negligence, recklessness and wilfulness, yet the Plaintiff is not entitled to bring this action at common law against the Defendant, but that his only remedy is to apply for compensation under the Workmen's Compensation Law." (Record, p. 12.)

■ The action was dismissed in the lower court by Judge Myers on the ground that the accident to Berry came within the provisions of the Workmen's Compensation Act of South Carolina, Act July 17, 1935, 39 St. at Large, p. 1231; that Berry, under this Act, was limited to his remedy under

the Act, and that therefore he could not bring the instant action. In this appeal, we need concern ourselves only with the correctness of this ruling by Judge Myers. We think the ruling was correct.

The apposite provisions of the Workmen's Compensation Act of South Carolina are herein set out:

"Where any person (in this section referred to as "owner"), undertakes to perform or execute any work which is a part of his trade, business or occupation and contracts with any other person (in this section referred to as "subcontractor") for the execution or performance by or under such subcontractor of the whole or any part of the work undertaken by such owner, the owner shall be liable to pay to any workman employed in the work any compensation under this Act which he would have been liable to pay if the workman had been immediately employed by him." Section 19 (a).

"The term 'employee' means every person engaged in an employment under any appointment or contract of hire or apprenticeship, express or implied, oral or written, including aliens, and also including minors, whether lawfully or unlawfully employed, but excluding persons whose employment is both casual and not in the course of the trade, business, profession or occupation of his employer * * *." Section 2 (b).

"This Act shall not apply to casual employees, farm laborers, Federal employees in South Carolina and domestic servants * * *." Section 14.

■ As we are confronted here with the interpretation of a statute of the State of South Carolina, we are, of course, bound by the interpretations placed on that statute by the highest court of this State. Judge Myers seemed to feel he was justified in his decision by the leading case of Marchbanks v. Duke Power Co., 190 S.C. 336, 2 S.E.2d 825, 831. Berry contends, however, that the facts in his case are substantially different from those in the Marchbanks case. He contends, further, that the decision in the Marchbanks case was based solely upon a consideration of the general provisions of Section 19 (a), without reference to the excepting clauses found in Section 2 (b) and Section 14, of the South Carolina Workmen's Compensation Act. We believe these contentions are without merit.

In the Marchbanks case, the Duke Power Company had entered into a contract with one Coln for the painting of 170 of its metal

poles. Under this contract, the Company was to furnish the paint and Coln was to paint the poles at the rate of $1 per pole. Coln employed Marchbanks to assist him in this work and, while Marchbanks was so engaged, he was injured by coming into contact with a wire alleged to have been defectively insulated. The decision of the Supreme Court of South Carolina was based on Section 19 (a) of the Workmen's Compensation Act and the Court held that Marchbanks, at the time of his injury, was engaged in work which was a part of the "trade, business or occupation of Duke Power Company". It was accordingly held that Marchbanks came within the purview of the Act, was therefore limited to his remedy under the Act, and thus could not bring an action at law based on these injuries.

Near the end of the Marchbanks opinion, 2 S.E.2d at page 838, we find this expression: "An Exception charges error in the Circuit Decree which finds as follows: 'No particular skill or special equipment was necessary to paint these poles.' What reference to the issues involved in this case has the reported language of the Circuit Judge? We see none; such finding did appellant no harm."

If there be any lingering doubt on the question of whether the fact that the work was of an unusual nature and required special skill played any part in deciding whether or not a particular accident comes under the South Carolina Workmen's Compensation Act, this question was definitely resolved in the negative by the Supreme Court of South Carolina in the recent case of Boseman v. Pacific Mills and Liberty Mutual Insurance Co., 193 S.C. 479, 8 S.E. 2d 878, decided May 9, 1940.

Berry also relies upon certain expressions contained in the case of Ward v. Ocean Forest Club, 188 S.C. 233, 198 S.E. 385. This case was decided before the Marchbanks case. True it is that the opinion in the Ward case had a good deal to say about the meaning of the word "casual" as used in the South Carolina Workmen's Compensation Act, and in the Compensation Acts of other States. However, on one of the main points on which Berry relies, the opinion in the Ward case is silent. For, in the opinion of Associate Justice Baker, in the Ward case, we find (198 S.E. at page 387): "It will be noted that there is an apparent inconsistency in Section 2 (b) and 14 (b) [of the South Carolina Workmen's Compensation Act], the exclusion in 2 (b) being 'persons whose employment is both casual and not in the course of the trade,' etc., and Section 14 (b) refers only to 'casual employees.' However, as we view this case, it is unnecessary that we herein discuss the seeming discrepancy."

We now address ourselves to that contention. The brief for Berry seems to proceed on the theory that a Workmen's Compensation Act is in derogation of the common law and should therefore be construed very strictly. An effective answer to this is found in Associate Justice Bonham's opinion in the Marchbanks case, 2 S.E.2d at page 835, where the opinion quotes with approval this excerpt from the opinion of Justice Fishburne in Rudd v. Fairforest Finishing Co., 189 S.C. 188, 200 S.E. 727, 728: "Compensation laws should be given a liberal construction in furtherance of the beneficent purpose for which they were enacted." In support of this, Baltimore & Philadelphia Steamboat Co. v. Norton, 284 U.S. 408, 414, 52 S.Ct. 187, 189, 76 L.Ed. 366, is cited. Mr. Justice Bonham's opinion also quotes with approval (2 S.E.2d at page 836) the following extract from the opinion in Walters v. Eagle Indemnity Co., 166 Tenn. 383, 61 S.W.2d 666, 667, 88 A.L. R. 654: "The Workmen's Compensation Act was adopted to protect industrial workers against the hazards of their employment, and to cast upon the industry in which they are employed a share of the burden resulting from industrial accidents."

It would be easy to cite many other cases to the same effect. It may well be, and possibly this is true in the instant case, that sometimes a recovery might be had in a common law action for an amount much larger than the amount which would be received under a Compensation Act. This, though, is more than balanced by the many advantages accorded to an injured employee in a proceeding under a Compensation Act which would not be found in a common law action. Nor are we impressed by Berry's argumentum ab inconvenienti—that sometimes in unusual instances, quite incongruous results may be reached under these Compensation Acts.

It is a well-known principle of statutory interpretation that, when this is possible, a statute should be so interpreted as to give meaning to all of its parts and so as to prevent seeming contradictions between these parts. A statute should also be interpreted both as a whole and also in the

light of its general scope, tenor and purpose. Section 19 of the South Carolina Workmen's Compensation Act sets out the scope of the Act and the first paragraph (a) makes an "owner" liable when the owner "undertakes to perform or execute any work which is a part of his trade, business or occupation and contracts with any other person (in this section referred to as "subcontractor") for the execution or performance by or under such subcontractor of the whole or any part of the work undertaken by such owner, the owner shall be liable to pay to any workman employed in the work any compensation under this Act which he would have been liable to pay if the workman had been immediately employed by him." Section 2 of the Act, in defining the term "employee", excludes from the operation of the Act "persons whose employment is both casual and not in the course of the trade, business, profession or occupation of his employer". Section 14 of the Act provides: "This Act shall not apply to casual employees." We think the word "casual", as used in Section 14, should be construed in the light of the definition of "employee" in Section 2 (b) and also in the light of the broad provisions of Section 19.

Cases from other states are, of course, not absolutely binding; but they are often both helpful and instructive. This is particularly true here, since the Supreme Court of South Carolina, as has been indicated, supra, in the Ward case, has expressly declined to pass specifically on this apparent conflict between separate provisions of the Workmen's Compensation Act of South Carolina.

The North Carolina Act is drawn in terms practically identical with the terms of the South Carolina Act, with the same apparent conflict, but in Johnson v. Asheville Hosiery Co., 199 N.C. 38, 153 S.E. 591, it was expressly decided that an employee is excluded from the provisions of the Act, if, but only if, both the employment be casual, and if he be not injured in the course of the employer's trade or business. Said Associate Justice Brogden in the Johnson case, 153 S.E. at page 594: "Section 14 (b) of the North Carolina Compensation Act provides that 'this Act shall not apply to casual employees, farm laborers,' etc. This section, however, is not totally repugnant to section 2 (b) for the reason that, even if the employment be casual, the employee is still entitled to compensation if he was injured while 'in the course of the trade, business, profession or occupation of his employer.' "

The Virginia case of Hoffer Bros. v. Smith, 148 Va. 220, 138 S.E. 474, 476, is to the same effect. It is only fair to observe, though, that in the Virginia Act, Acts 1918, c. 400, Section 2 (b) (defining the term "employee" under the Act) excepts "one whose employment is not in the usual course of the trade, business occupation or profession of the employer". The word "casual" is not used in the definition of an employee; but Section 15 of the Act provides: "This act shall not apply to common carriers * * * nor to casual employees." The Virginia Court, however, did use this pertinent language: "In construing section 15, supra, we must, if possible, give to the words 'casual employees' a meaning which conforms with the legislative intent and does not conflict with the meaning of the word 'employee' as used in section 2, supra. The general purpose of the Workmen's Compensation Act was to provide a compensation for all employees injured in the usual course of the employer's business. Section 2 fully protects this class of employees. To make certain that those whose employment is not in the usual course of the trade, business, or occupation of the employer shall not receive compensation, it is provided in section 15 that the act shall not apply to 'casual employees'—that is, employees engaged in a casual employment. The test is the nature of the employment and not the nature of the contract. An employment cannot be said to be casual where it is in the usual course of the trade, business, or occupation of the employer. But it is casual when not permanent nor periodically regular, but occasional, or by chance, and not in the usual course of the employer's trade or business."

It would be easy to multiply cases in other states which express the same philosophy, even though the wording of these statutes may differ somewhat from the wording of the South Carolina statute. For the purposes of this opinion, we do not believe this is necessary; but we may cite three interesting cases. In these cases, the facts were strikingly similar to those of the instant case, and though, in every instance, the work was of an emergency character, the injury was held to come under the provisions of the particular Workmen's Compensation Act. In Persing v. Citizens Traction Co., 294 Pa. 230, 144 A. 97, the driver

of a tractor, who was generally employed by another, was injured while towing a stalled street car; the Court decided this work was within the scope of the business of the street railway. In Johnson v. Wisconsin Lumber & Supply Co., 203 Wis. 304, 234 N.W. 506, 72 A.L.R. 1279, the driver of a truck required some assistance in getting this truck out of a soft spot in the highway into which one wheel of the truck had sunk, and the injured person had been secured for this purpose by the driver of the truck; and, again, it was decided that the person injured must seek his remedy under a Compensation Act against the owner of the truck. In State ex rel. Nienaber v. Dist. Court, 138 Minn. 416, 165 N. W. 268, L.R.A.1918F, 200, the driver of a coal wagon, which was stuck in mud, asked a street sprinkler employed by the City for assistance and the street sprinkler hitched his team in front of the team attached to the wagon, for the purpose of pulling the wagon out of the mud; here, also, it was held that the street sprinkler came under the Workmen's Compensation Act and thus had, by virtue of the Act, a claim against the owner of the coal wagon.

Counsel for Berry press on us another contention in an endeavor to distinguish the instant case from the Marchbanks case. We are told that in the Marchbanks case the poles had to be painted more or less periodically, or at substantially similar intervals, and that the painting of the poles at such intervals must, therefore, have been contemplated by the Power Company. But, we are further told, in the instant case, Greyhound had regular shops for the inspection and repair of its busses, and repairs to a bus on the road are unusual, infrequent and exceptional. For the purposes of this case, this contention seems to be lacking in merit. True it is that Greyhound could not tell when, where and how an unforeseen accident might happen to one of its busses, yet it is none-the-less true that Greyhound must have known that, however careful its own inspections might be and however efficient the repair work in its own shops might prove, road accidents to its busses must sometimes happen, and, upon their happening, necessarily some repairs must be made to the injured bus at or near the scene of the accident. We, therefore, believe that the emergency repair work being done by Berry at the time of the injury was, under the South Carolina Workmen's Compensation Act, a part of Greyhound's trade, business or occupation.

For the reasons set out above, we affirm the judgment of the District Court.

Affirmed.