494 S.E.2d 123

**William R. HARRELL, Appellant,**

v.

**PINELAND PLANTATION, LTD., Respondent,**

**and**

**Joseph Land and Company, Inc., Defendant.**

**No. 2762.**

Court of Appeals of South Carolina.

Heard Oct. 8, 1997.

Decided Dec. 8, 1997.

Rehearing Denied Mar. 19, 1998.

186

Cureton, J., concurred with opinion.
Goolsby, J., dissented with opinion.

---

Carl E. Pierce, II and Joseph C. Wilson, IV, both of Hood Law Firm, Charleston;  and John E. Parker, of Peters, Murdaugh, Parker, Eltzroth & Detrick, Hampton, for appellant.

Bert G. Utsey, III, of Sinkler & Boyd, Charleston, for respondent.

Joseph H. McGee, of Buist, Moore, Smythe & McGee, Charleston, for defendant.

CONNOR, Judge:

William R. Harrell sued Pineland Plantation Company in negligence for injuries he sustained on Pineland's property. The trial court granted Pineland's motion to dismiss. Harrell appeals. We reverse and remand.

## FACTS

Pineland Plantation Company, a California partnership, owns Pineland Plantation in Colleton County. Haynes Kendall, Pineland's general partner, maintains the plantation primarily for his family's personal enjoyment. Pineland contracted with Folk Land Management to oversee the plantation. Folk Land employed Harrell as the plantation's daily manager. His duties included identifying maintenance and upkeep needs, repairing equipment and machinery, managing timber and wildlife, and helping entertain plantation guests.

Harrell also assisted Pineland in developing a marketing plan focusing on renting the plantation. Pineland produced a brochure, but never widely distributed it. Nor has the plantation ever had a paying guest or realized any income from the undertaking.

On July 23, 1993, Kendall invited Harrell and his family to a dinner party with members of Harrell's extended family. In preparation for the party, Harrell checked on the activities of the handyman, scraped the driveway, and cleaned out the barbeque shed. He also made arrangements for the food.

As they waited for the out-of-town guests to arrive, Harrell and Kendall swam with their children in a pond on the property. Several times Kendall and Harrell each swung out over the pond from a rope tower and dropped into the water. During one jump Harrell broke his neck in a shallow area of the pond.

Harrell brought a workers' compensation claim against Folk Land. That claim resulted in a settlement agreement which was approved by the Workers' Compensation Commission.

Harrell then brought this negligence action against Pineland. The trial court granted Pineland's motion to dismiss, holding 1.) As Pineland's statutory employee, Harrell could not sue Pineland, because under the exclusivity provisions of the Workers' Compensation Act the court had no subject matter jurisdiction; and 2.) Harrell could not deny his activities were work-related because he had previously filed a workers' compensation claim against Folk Land.

## ANALYSIS

■ The determination of whether a worker is a statutory employee is jurisdictional. We must "review the entire record and decide the jurisdictional facts in accord with the preponderance of the evidence." *Glass v. Dow Chem. Co.*, 325 S.C. 198, 202, 482 S.E.2d 49, 51 (1997).

■ Harrell first argues Pineland cannot be his statutory employer because the plantation was not maintained as a "business," but was kept for Kendall's personal use and enjoyment.

In a leading case, the Supreme Court of Pennsylvania interpreted the word "business" to mean "the habitual or regular occupation that the party was engaged in with a view to winning a livelihood or some gain." *Marsh v. Groner*, 258 Pa. 473, 102 A. 127, 129 (1917). Since then, courts have "followed the example of that case in giving the word its ordinary and popular meaning." 4 Arthur Larson, *Workers' Compensation Law* § 50.22 (1997).

Although Pineland produced a rental brochure, it made no diligent effort to widely distribute the brochure or otherwise market the plantation. Furthermore, it has never entertained a paying guest. To the contrary, Kendall used the plantation almost exclusively for personal enjoyment. The one-time production of a brochure can hardly be enough to characterize Pineland as a business. *Cf. Marsh* 102 A. at 129 (activity which is not regular or habitual is not business).

Moreover, Kendall, Pineland's general partner, openly admitted Pineland existed to serve as a tax write-off. An inactive tax shelter used primarily for personal enjoyment provides gain to its beneficiary, but does not constitute business in the "ordinary and popular meaning" of the word. *Cf. Marsh* at 129 ("Eliminate them, livelihood and gain, and it is no longer business, but amusement, which no one ever confounds with business."); 4 Arthur Larson, *Workers' Compensation Law* § 50.22 (1997).

Because Pineland was not engaged in business at the time of Harrell's injury, it cannot be deemed Harrell's statutory employer. S.C.Code Ann. § 42–1–410 (1985).

■ Even if Pineland were engaged in business when Harrell was injured, Pineland still may not claim immunity under the Act because it did not provide any form of workers' compensation insurance.[1] *Bean v. Piedmont Interstate Fair Ass'n,* 222 F.2d 227 (4th Cir.1955) ("Numerous cases have upheld the right of an injured employee to maintain a suit at common law against an employer who has failed to obtain insurance as required by the Workmen's Compensation laws."); 6 Arthur Larson, *Workers' Compensation Law,* § 67.22 (1997) ("A common exception to the exclusiveness of the compensation remedy is the right of suit against an employer who fails to secure his compensation liability by taking out insurance or qualifying as a self-insured.").

The Worker's Compensation Act imposes a duty to provide insurance. S.C.Code Ann. § 42–5–10 (1985). The Act states, "*Every* employer who accepts the compensation provisions of this Title shall secure the payment of compensation to his employees in the manner provided in this chapter." Id. (emphasis added).

Pineland argues an upstream employer has secured compensation under the Act when it contracts with a direct employer who provides workers' compensation insurance coverage for its employees. To support this proposition, Pineland points to the following language:

---

1. We note Pineland's failure to procure such insurance as one more piece of evidence Pineland never intended to operate as an actual business.

The fact that neither Williams & Madjanik, Inc. nor Island Properties had to pay the *benefits* provided is of no consequence. As a practical matter both absorbed the cost of coverage through their contracts with those who agreed to actually perform the work. This seems to have been the General Assembly's intent when it enacted this legislation. The owner who obtains the benefit of the work inevitably absorbs the costs of providing protection for the workers. In return, the employer receives immunity from other remedies which ordinarily might be sought by the employee.

*Parker v. Williams & Madjanik, Inc.*, 275 S.C. 65, 74, 267 S.E.2d 524, 528 (1980), (emphasis added).

In *Parker*, however, the plaintiffs never asserted the companies in question had not complied with their statutory duty to secure compensation. Therefore, they did not seek to invoke the penalty provision. *Id.*[2]

Accordingly, nothing in *Parker* relieves upstream employers of the statutory duty to directly secure compensation. To hold otherwise would be to isolate the above language and interpret it in a way which ignores the other mandate in *Parker*—double protection for the worker. The court in *Parker* fully embraced the concept of double protection when it proclaimed, "[B]oth the owner and the contractors whom he engages to do his work are subjected to the requirements of the Act, and the workers receive double protection." *Id.* at 73, 267 S.E.2d at 528 (quoting *Blue Ridge Rural Elec. Coop., Inc., v. Byrd*, 238 F.2d 346 (4th Cir.1956), *rev'd on other grounds*, 356 U.S. 525, 78 S.Ct. 893, 2 L.Ed.2d 953 (1958)).

A statutory analysis leads to the conclusion the Legislature fully intended to provide double protection for workers. The Act requires employers to secure compensation "in the manner provided in this chapter." S.C.Code Ann. § 42-5-10 (1985). Moreover, the very next section specifies the manner for securing compensation. It gives employers the option of either purchasing insurance, or submitting to the commission

---

2. In fact, the court listed the code sections relevant to the parties' rights in the matter and failed to list either S.C.Code Ann. § 42-5-10 (1985) or S.C.Code Ann. § 42-5-40 (1985), the provisions which impose the duty to secure compensation and provide the penalty for failure to do so. *Parker* at 70-72, 267 S.E.2d at 527.

satisfactory proof of their ability to directly pay compensation. S.C.Code Ann. § 42–5–20 (1985) (amended 1996). Pineland did neither of these.

Additionally, nothing in the chapter provides an exemption for an upstream employer who contracts with a direct employer who is insured.[3] To the contrary, the Act directly contradicts Pineland's contention it could secure compensation indirectly through its agreement with Folk Land Management:

> No contract or agreement, written or implied, and no rule, regulation or other device shall in any manner operate to relieve *any* employer, in whole or in part, of any obligation created by this Title except as otherwise *expressly* provided in this Title.

S.C.Code Ann. § 42–1–610 (1985). (emphasis added).

Our Supreme Court has recognized that some states have Workers' Compensation Acts which require the "owner or principal to see that the contractor carries compensation insurance" and impose liability on the owner "only in instances where he fails to do this." *Marchbanks v. Duke Power Co. et al.*, 190 S.C. 336, 351–52, 2 S.E.2d 825, 831–32 (1939). The court has noted, however, that these acts are "materially different from that in force in this State." *Id.* Our Act specifically allows employees to pursue an action "at law" against "[a]ny employer required to secure the payment of compensation under this Title who refuses or neglects to secure such compensation." S.C.Code Ann. § 42–5–40 (1985).

---

3. Although its date of enactment subsequent to this case renders it noncontrolling, the Legislature has adopted a new section creating a system whereby upstream employers can shift ultimate responsibility for workers' compensation to contractors or subcontractors. The section's enactment implies the Legislature believed prior to its adoption such an assignment of responsibility was prohibited. *Vernon v. Harleysville Mut. Cas. Co.*, 244 S.C. 152, 135 S.E.2d 841 (1964) (amendment reflects an intent to change the existing law). We also note under the new section, once an upstream employer shifts the burden of workers' compensation, it can no longer be deemed a statutory employer. S.C.Code Ann. § 42–1–415 (Supp.1996). This evidences the General Assembly's continuing commitment to the idea "[t]he immunity granted under the Act parallels the liability imposed by the Act." *Neese v. Michelin Tire Corp.*, 324 S.C. 465, 479, 478 S.E.2d 91, 98 (Ct.App.1996), *cert. denied*, (Sept. 19, 1997).

Pineland further argues even if the penalty provision applies, it cannot be invoked in this case because Harrell has elected his remedy by recovering a workers' compensation award from Folk Land. *Bell v. South Carolina Elec. & Gas Co.*, 234 S.C. 577, 109 S.E.2d 441 (1959). However, the cases on which Pineland relies are distinguishable, because in none of those was there a claim the owner had not complied with the Act.[4] *Id.*

Moreover, the Act directly contradicts the contention the election of remedies provision can operate to relieve a noncomplying employer from the provided penalty. "*Nothing* in this Title shall be construed to relieve any employer or employee from penalty for failure or neglect to perform any statutory duty." S.C.Code–Ann. § 42–1–640 (1985). (emphasis added).

Finally, Pineland was obviously concerned about its uninsured status. It purchased insurance after the accident, but prior to the filing of Harrell's lawsuit. Pineland alleges purchasing insurance shows it was no longer refusing to secure compensation. However, to comply with the statutory mandate Pineland would have to have purchased insurance prior to the accident. S.C.Code Ann. § 42–5–10 (1985) ("*While such security remains in force* he [the employer] ... shall only be liable to any employee ... for personal injury or death by accident to the extent and in the manner specified in this Title.") (emphasis added); 6 Arthur Larson, *Workers' Compensation Law,* § 67.22 (1997) ("[I]f this [insurance in effect at the time of the injury] was not so, no amount of conscientious but belated effort to rectify the omission [of coverage] will retroactively confer immunity from tort suit.").

In conclusion, Pineland Plantation was not engaging in business when Harrell was injured. Therefore, the partnership cannot claim immunity under the Workers' Compensation Act because it was not Harrell's statutory employer. Additionally, even if Pineland were Harrell's statutory employer, the partnership failed to secure compensation in the manner provided in the Act. Therefore Harrell could sue Pineland at

---

**4.** In fact, as in *Parker,* the *Bell* opinion lists the code sections relevant to its holding and makes no mention of 1942 Code § 7035–10 or 1942 Code § 7035–71, the predecessors to today's sections 42–5–10 and 42–5–40. *Id.* at 581, 109 S.E.2d at 442–43.

law under the Act's penalty provision. S.C.Code Ann. § 42–5–40 (1985).[5]

Accordingly, the decision of the trial court is

REVERSED AND REMANDED.

CURETON, J., concurs in separate opinion and GOOLSBY, J., dissents in separate opinion.

CURETON, Judge, concurs:

I concur in Judge Connor's view that Pineland was not a covered employer at the time of Harrell's injury because it had not secured worker's compensation coverage. Additionally, I would reverse the trial court's decision because I am of the opinion that at the time of Harrell's accident, he was not performing work which was a part of the trade, business or occupation of Pineland.

Initially, I observe that I agree with Judge Goolsby's conclusion that we must accept Pineland was in business even though it realized no income. Unquestionably, Pineland had designed a plan to market the plantation for recreational purposes. Moreover, Pineland was involved in the management of its timber resources, presumably with a view toward long term profits therefrom.

Statutory law provides that when an owner contracts with a subcontractor to perform work which is a part of the owner's trade, business, or occupation, and a workman is injured in performing that work, then the owner is liable to the workman for workers' compensation benefits as if the owner had hired the workman directly. S.C.Code Ann. § 42–1–400 (1985). The public policy behind the requirements of this provision is stated as follows:

> The manifest purpose is to afford the benefits of compensation to the men who are exposed to the risks of its business, and to place the burden of paying compensation upon the organizer of the enterprise. In consequence, both the owner and the contractors whom he engages to do his work, are

---

5. Because of our holding on these grounds, we need not address Harrell's remaining arguments.

subjected to the requirements of the Act, and the workers receive double protection.

*Parker v. Williams & Madjanik, Inc.*, 275 S.C. 65, 73, 267 S.E.2d 524, 528 (1980) (quoting *Blue Ridge Rural Elec. Coop. v. Byrd,* 238 F.2d 346 (4th Cir.1956), *rev'd on other grounds,* 356 U.S. 525, 78 S.Ct. 893, 2 L.Ed.2d 953 (1958)).

These statements of public policy make it clear that the legislature, in enacting § 42–1–400, intended to make an owner the statutory employer of a worker for a given injury only if, at the time of the injury, the worker was performing the work of the owner as opposed to the work of a third party. Under the unique facts of this case, I am of the opinion that the work Harrell was performing at the time of his injury was for Kendall personally, and did not advance any business interest of Pineland.

I agree with Judge Goolsby that Harrell has not argued that the activity Folk Land Management performed for Pineland at the time he was injured was not an important part of Pineland's business. Nevertheless, as I read the cases, our focus should be on the activity of the worker at the time of his injury. *Cf. Ost v. Integrated Products, Inc.*, 296 S.C. 241, 371 S.E.2d 796 (1988); *Wheeler v. Morrison Mach. Co.*, 313 S.C. 440, 438 S.E.2d 264 (Ct.App.1993); *Riden v. Kemet Elec. Corp.*, 313 S.C. 261, 437 S.E.2d 156 (Ct.App.1993).

Harrell argues in his brief that the injury did not occur within a period of employment because he was providing for the personal entertainment of Kendall at the time of the injury. He further argues that under the dual purpose doctrine, his injury did not occur during a time when he was an employee of Pineland. Additionally, he argues that the activity in which he was engaged at the time of his injury could not have been pursuant to any business requirements of Pineland. I think these arguments fairly raise the issue of whether or not the activity Harrell was involved in at the time of his injury was an important or essential part of the trade or business of Pineland.

According to the testimonies of Kendall, Harrell, and Robert Folk (Folk), the owner of Folk Land Management, the services Harrell was performing at the time of his injury were within the scope of his employment with Folk Land Manage-

ment because, as Folk testified, his company was hired by Kendall to, among other things, provide for the personal entertainment of Kendall. Kendall explained the business of Pineland as follows:

> The plantation when it was purchased was set up *not only for my personal use but also as a business entity* to be rented to guests and as part of the business plan Folk Land Management was involved not only for the entertainment of guests, the management of the plantation on a day to day basis covering everything from having the maid clean the house, to the handy man, to managing the land, planting the crops so that was the overall business plan. (Emphasis added).

Kendall stated further that under the "business entity" aspect of his plan for use of the plantation, he intended to rent out the plantation to others "for purposes of being able to enjoy the wildlife or to do a hunt" or for a "retreat." Kendall acknowledged that Harrell was hurt at an occasion which was a personal social outing for Kendall's family. Clearly, under Kendall's own explanation of the operation of Pineland, Harrell was performing duties for the "personal use" or enjoyment of Kendall when he was injured.

An analogous case is *Morgan v. Industrial Comm'n,* 89 Ill.2d 502, 60 Ill.Dec. 938, 433 N.E.2d 1305 (1982). There, a claimant worked part-time for a cemetery corporation and part-time as a farm laborer on the corporation president's personal farm. The *Morgan* court found the fact that the claimant was paid only by the corporation not to be conclusive of the claimant's employment status when at the time of his injury he was working on the farm of the president of the corporation. The court, in holding the claimant failed to prove his injury arose out of and in the course of his employment with the corporation, reasoned the claimant was paid by the corporation only for convenience, and noted that the president reimbursed the corporation for wages paid the claimant. *Id.* 60 Ill.Dec. at 938–40, 433 N.E.2d at 1305–07. The *Morgan* court did state, "[t]here is also no doubt that when the accident occurred he was performing duties solely related to his employment on the farm and wholly unrelated to any duties he had at the cemetary." *Id.* at 939, 433 N.E.2d at 1306. While it is true that in general the services Harrell was

performing for Kendall's party would be similar to those which Harrell presumably would have performed had there been any paying renters of the plantation, I would hold that providing services solely for Kendall's personal enjoyment is "wholly unrelated" to Pineland's business of renting the plantation to guests and managing timber.

Because Pineland has asserted its statutory employer status as a defense, the burden is on it to prove that status. *Cf. Glass v. Dow Chem. Co.*, 316 S.C. 116, 447 S.E.2d 209 (Ct.App. 1994), *aff'd*, 325 S.C. 198, 482 S.E.2d 49 (1997). I would hold the evidence conclusively shows that Harrell's injury occurred during a period of employment when he worked for Kendall personally, and not for the benefit of or the promotion of Pineland's business. Manifestly, entertaining Kendall and his social guests was not a risk of Pineland's business.

It has been held that when a person in authority directs an employee to do some work outside of his normal duties for the private benefit of the superior, an injury incurred in the course of that work is compensable. *See Hicks v. Piedmont Cold Storage, Inc.*, 324 S.C. 628, 479 S.E.2d 831 (1996) (quoting the 1996 version of 2 Arthur Larson & Lex Larson, *Larson's Workers' Compensation Law* § 27.41 (1997)), *cert. granted*, (June 17, 1997). I am also aware of those cases that permit compensation, even though at the time of injury the employee was not directly involved in providing services to his employer. *See, e.g. Osteen v. Greenville County School Dist.*, 323 S.C. 432, 475 S.E.2d 775 (Ct.App.1996) (personal comfort doctrine), *cert. granted*, (March 5, 1997). Even if these theories apply to a statutory employment situation, the evidence shows that Harrell's work for Kendall's personal use of the plantation was not temporary, but constituted his usual employment duties. In any event, there are obviously situations where an activity would fall within the "course of employment" test for a direct employer but would fail to fall within one of the more restrictive "statutory employer" tests for the upstream employer.

Finally, I would reverse the trial court's finding relative to judicial estoppel for the reason that the worker's compensation settlement was determinative only of Harrell's employment status with Folk Land Management and not Pineland.

Harrell was performing employment duties for Folk Land Management at the time of injury because its contract with Kendall required Harrell to perform whatever service Kendall requested of him, whether those services related to Pineland's "business entity" or Kendall personally. On the other hand, in order for Harrell's work to constitute him a statutory employee of Pineland, it must somehow benefit Pineland as a part of its business or trade. As noted above it did not.

For these additional reasons, I would reverse the order of the trial court.

GOOLSBY, Judge, dissenting:

The following opinion was originally drafted to serve as the majority opinion. I now submit it as my dissenting opinion.

William R. Harrell brought this negligence action against Pineland Plantation Company (Pineland) seeking to recover damages for injuries caused when Harrell fell while swinging from a rope into a shallow pond on Pineland's property. The trial court granted Pineland's motion to dismiss, holding Pineland was Harrell's statutory employer and the trial court lacked subject matter jurisdiction of Harrell's claim because of the exclusivity provisions of the Workers' Compensation Act. Harrell appeals. The dispositive issue on appeal is whether Pineland was Harrell's statutory employer and thus immune from an action at law. I would affirm.

## STANDARD OF REVIEW

Because the determination of whether a worker is a statutory employee is jurisdictional, the question here is one of law. *Voss v. Ramco,* 325 S.C. 560, 482 S.E.2d 582 (Ct.App.1997). We must, therefore, "review the entire record and decide the jurisdictional facts in accord with the preponderance of the evidence." *Glass v. Dow Chem. Co.,* 325 S.C. 198, 202, 482 S.E.2d 49, 51 (1997); *see Givens v. Steel Structures, Inc.,* 279 S.C. 12, 301 S.E.2d 545 (1983) (finding that facts establishing the jurisdiction of the Workers' Compensation Commission are reviewed by the appellate court based on the preponderance-of-the-evidence standard).

## FACTS

Pineland is a California partnership that owns a plantation in Colleton County. The plantation is maintained primarily for the personal use and enjoyment of the family of Haynes Kendall, Pineland's general partner. Pineland contracted with Folk Land Management (Land Management) to manage and maintain the plantation. Land Management employed Harrell. Beginning in 1990, Harrell daily managed the plantation. His duties included identifying maintenance and upkeep needs, maintaining equipment and machinery, managing the timber and wildlife on the property, and participating in the entertainment of plantation guests.

Shortly before the injury occurred, Harrell also assisted Pineland in developing an overall marketing plan that focused on rental of the plantation. He entertained a travel agent to promote this aspect of the plantation's business. These efforts enabled Pineland to develop a marketing brochure and other marketing literature. Despite Pineland's marketing efforts, the plantation never had a paying guest and never realized any income. The guests that were entertained at the plantation were primarily members of Kendall's family. The Pineland partnership served as a tax write-off for Kendall.

On July 23, 1993, Kendall invited Harrell and his family to the plantation for a dinner party. Kendall's parents and his brother's family were to visit the plantation that night. Kendall suggested Harrell bring his children to make it a more jovial social atmosphere and to ensure the other guests would feel more at home. Harrell checked on the activities of the handyman, scraped the driveway, and cleaned out the barbecue shed. Harrell also attended to the food and other preparations in anticipation of the evening's activities.

When Harrell and his family later arrived at the plantation, Harrell brought the chicken that a cook was to prepare. As they waited for the out-of-town guests to arrive, Harrell and Kendall played catch with a baseball. Afterward, they mutually agreed to swim with the children in a shallow pond there on the property. While swimming, Kendall and Harrell each swung over the pond on a rope that was tied to a tower and dropped into the water several times. The last time Harrell did this, he broke his neck. He is now a quadriplegic.

Harrell brought a workers' compensation claim against Land Management. Harrell and Land Management reached a settlement that the Workers' Compensation Commission approved pursuant to their petition.

Harrell then brought this negligence action against Pineland. The trial court granted Pineland's motion to dismiss, holding (1) Harrell was a statutory employee of Pineland and thus the court lacked subject matter jurisdiction of the action because of the exclusivity provisions of the Workers' Compensation Act (the Act) and (2) Harrell was estopped to deny his activities were work-related because of Harrell's previous filing of a workers' compensation claim against Land Management.

## DISCUSSION

Harrell argues the trial court erred in deciding that Pineland was his statutory employer. I disagree.

Although coverage under the Act is generally dependent upon the existence of an employer-employee relationship, *McLeod v. Piggly Wiggly Carolina Co.*, 280 S.C. 466, 313 S.E.2d 38 (Ct.App.1984), section 42–1–400 makes an owner liable, in some circumstances, for payment of compensation to a worker who is not directly employed by the owner but is directly employed by a subcontractor. Section 42–1–400 states, in pertinent part:

When any person ... referred to as "owner," undertakes to perform or execute any work which is a part of [its] trade, business or occupation and contracts with any other person ( ... referred to as "subcontractor") for the execution or performance by or under such subcontractor of the whole or any part of the work undertaken by such owner, the owner shall be liable to pay to any workman employed in the work any compensation under this Title which [it] would have been liable to pay if the workman had been immediately employed by [it].

S.C.Code Ann. § 42–1–400 (1985).

For this court to conclude that Harrell was a statutory employee of Pineland at the time he was injured, section 42–1–400 requires one of the following three tests be satisfied: the activity performed by Land Management through Harrell (1)

must be an important part of Pineland's trade or business, (2) must be a "necessary, essential, and integral part" of Pineland's business, or (3) Pineland employees must have previously performed the activity. *Glass,* 325 S.C. at 201, 482 S.E.2d at 50; *Riden v. Kemet Elects. Corp.,* 313 S.C. 261, 263, 437 S.E.2d 156, 157–58 (Ct.App.1993). The inquiry focuses on the services performed by or activities of the subcontractor and not the specific activity of the employee at the time of injury. *See Carter v. Florentine Corp.,* 310 S.C. 228, 231, 423 S.E.2d 112, 113 (1992) (emphasizing that "[t]hree tests are applied in determining whether an employee of a *subcontractor* is a statutory employee of the *owner* " and finding that the activity generally performed by the subcontractor was essential to the owner's business operation without addressing the employee's activities at the time of injury), *overruled on other grounds by Ballenger v. Bowen,* 313 S.C. 476, 443 S.E.2d 379 (1994). Each case must be determined on its own facts. *Glass,* 325 S.C. at 201, 482 S.E.2d at 51. In deciding this issue, we are required to resolve doubts about a worker's status in favor of including the worker under the jurisdictional reach of the Act. *Neese v. Michelin Tire Corp.,* 324 S.C. 465, 478 S.E.2d 91 (Ct.App.1996).

## I.

Harrell argues Pineland could not be a statutory employer because the plantation was not maintained as a "business" but was maintained for Kendall's personal use and enjoyment.

Courts traditionally have given "the word ['business'] its ordinary and popular meaning." 4 Arthur Larson, *Workers' Compensation Law* § 50.22 (1991). In the leading case of *Marsh v. Groner,* 258 Pa. 473, 102 A. 127, 129 (1917), quoted by Professor Larson, the court interpreted the word "business" to mean "the habitual or regular occupation that the party was engaged in, with a view to winning a livelihood or some gain." 4 Arthur Larson, *Workers' Compensation Law* § 50.22 (1991). Pineland's continuing efforts in the months preceding and following Harrell's accident to market the plantation were certainly undertaken "with a view to winning a livelihood or some gain." Pineland, then, was engaged in "business," notwithstanding its failed efforts to attract paying guests. *Cf. Wender & Roberts, Inc. v. Jones,* 95 Ga.App. 82,

97 S.E.2d 160 (1957) (holding one employed to work on country estate that belonged to president of drug company and that was used to entertain doctors, customers, and their families, was statutory employee of drug company).

Having concluded Pineland was a business, we ordinarily would turn to the question of whether the activity Land Management performed for Pineland satisfies one of the three tests mentioned in *Glass* for determining the question of whether a worker is a statutory employee of an owner. But this issue is not before us. Harrell makes no argument that, if Pineland was engaged in a business, the activity Land Management performed for Pineland at the time he was injured was not an important part of Pineland's business, was not a necessary, essential, and integral part of Pineland's business, or was not an activity Pineland's own employees had performed. *See First Sav. Bank v. McLean,* 314 S.C. 361, 444 S.E.2d 513 (1994) (holding an issue not argued in the brief is deemed abandoned and may not be considered on appeal).

Because I would hold Pineland was engaged in a business at the time Harrell was injured and because Harrell does not argue that the activity of Land Management did not fall within any of the three tests for determining whether one is a statutory employee, I would affirm the finding of the trial court that Pineland was then Harrell's statutory employer.

## II.

Harrell argues, however, that Pineland should not benefit from the Act's immunity provisions because (1) Pineland did not have workers' compensation insurance coverage at the time of Harrell's injury and (2) Pineland was not covered by the Act because it had fewer than four employees.

## A.

Regarding the failure of Pineland to have workers' compensation insurance, Harrell contends that the Act links insurance coverage with immunity. That is, the immunities afforded an employer under the Act are dependent upon the employer's accepting the obligations of the Act. One such obligation is for the employer to provide workers' compensation insurance.

Under section 42–5–10, an employer "who accepts the compensation provisions" of the Act and "secure[s] the payment of compensation to [its] employees ..., shall only be liable ... to the extent and in the manner specified in" the Act. S.C.Code Ann. § 42–5–10 (1985). An employer that does not "secure the payment of compensation," *e.g.*, by procuring workers' compensation insurance, can lose the immunity granted by the Act. S.C.Code Ann. § 42–5–40 (1985).

The question here, then, is whether Pineland, Harrell's statutory employer, "secured payment of compensation." If Pineland did so, Harrell may not bring an action at law against it.

Pineland's success in this case depends on the answer to the question of whether Land Management's purchase of workers' compensation insurance and its participation in the workers' compensation program can be attributed to Pineland. I think it can be.

The costs incurred by the subcontractor in securing workers' compensation insurance coverage is ultimately borne by the owner as part of the contract costs regardless of whether the contract explicitly spells it out. *See Parker v. Williams & Madjanik, Inc.*, 275 S.C. 65, 74, 267 S.E.2d 524, 528 (1980) (stating "[t]he owner who obtains the benefit of the work inevitably absorbs the costs of providing protection for the workers"). Moreover, these costs are borne by the owner to the same extent as if the owner paid the premiums itself. Thus, when an owner contracts with a subcontractor to provide services, as occurred here, the owner "secure[s] the payment of compensation to [its] employees" within the meaning of the Act when the subcontractor provides workers' compensation insurance coverage under the Act.[1]

---

1. I have looked at the cases cited by Harrell that would allow a common-law negligence action against an employer that does not secure compensation as required under the Workers' Compensation Act. Each is readily distinguishable from the case here. I discuss them briefly below, in no particular order.

The first case, *Baldwin v. Wrecking Corp. of America*, 464 F.Supp. 185 (W.D.Va.1979), a federal trial court decision, involved an action against a subcontractor who failed to obtain workers' compensation coverage even though the general contractor had coverage to which the employee might have been entitled.

### B.

As to Harrell's argument that Pineland is not entitled to immunity because it had fewer than four employees, I agree with the trial court's holding that Pineland had four employees at the time of Harrell's accident.

Both direct and statutory employees count toward satisfying any requirement that an employer have four or more employees at the time of a work-related injury. *Ost v. Integrated Prods., Inc.*, 296 S.C. 241, 371 S.E.2d 796 (1988). Pineland employed Isaac Middleton and Lucrisher Smith directly. Middleton worked approximately forty hours per week performing yard work and assisting with sporting clays, and Pineland paid Middleton through an account administered by Land Management. Smith worked one day per week on a set schedule cleaning the house and assisting with cooking, and she was also paid through an account administered by Land Management. Harrell himself constitutes a third Pineland employee.

The second case, *Zocco v. United States*, 791 F.Supp. 595 (E.D.N.C. 1992), also a federal trial court decision, also involved an action against a subcontractor who failed to obtain workers' compensation coverage even though the general contractor had coverage to which the employee might have been entitled.

The third case, *Reid v. Hansen*, 440 N.W.2d 598 (Iowa 1989), involved a common-law negligence action by a non-resident against an employer who did not have workers' compensation insurance coverage in the state where the employee was injured. The employee recovered under the workers' compensation act of his resident state and then filed a tort action in the state where he was injured. The Iowa court held the employee's recovery of workers' compensation in the foreign state did not bar the employee's common-law action under the doctrine of election of remedies.

The fourth case, *Hernandez v. Chavez Roofing*, 235 Cal.App.3d 1092, 286 Cal.Rptr. 919 (1991), like *Baldwin* and *Zocco*, involved an action against a subcontractor who failed to obtain workers' compensation coverage even though the general contractor had coverage to which the employee might have been entitled.

Although the fifth case, *Brown v. Leighton*, 385 Mass. 757, 434 N.E.2d 176 (1982), involved an employer who failed to obtain workers' compensation coverage, it did not involve a situation in which a subcontractor provided such coverage and a statutory employer did not.

As for the sixth case, *Robinson v. Bell*, 767 P.2d 177 (Wyo.1989), the court simply held an employer cannot obtain immunity from a negligence action by applying for workers' compensation coverage after its employee has been injured.

Harrell, however, argues Robert Folk, general partner of Land Management, is an independent contractor and cannot be counted as a Pineland employee. Folk's status, however, need not be determined. This is because Lisa Hiers, a direct employee of Land Management, regularly performed bookkeeping for Pineland, which was a "necessary, essential, and integral part" of Pineland's business. *Riden,* 313 S.C. at 263, 437 S.E.2d at 157–58.[2] I would find, therefore, that Pineland regularly employed at least four employees at the time of Harrell's injury.

### III.

By seeking workers compensation, Harrell properly pursued the remedy provided by the Act. His pursuit of workers' compensation resulted in a settlement approved by the Workers' Compensation Commission. Once the commission approved the settlement, Harrell's successful compensation claim operated to bar any alternative remedy, including the bringing of a damage claim against Pineland, his statutory employer. *See* 82 Am.Jur.2d *Workers' Compensation* § 108, at 107 (1992); *see also Parker,* 275 S.C. at 65, 267 S.E.2d at 528 (holding statutory employer immune from suit by employee regardless of the fact that the statutory employer did not pay the workers' compensation benefits provided to employee); *Bell v. South Carolina Elec. & Gas Co.,* 234 S.C. 577, 582, 109 S.E.2d 441, 443 (1959) (holding "[t]he plaintiff, having collected from the contractor ... doing the work for the owner, ... which was part of its business, trade or occupation, is barred from bringing a common-law action against the statutory employer and the plaintiff cannot recover from both and recovery under the Compensation Act bars a recovery or action at common law"); *Neese,* 324 S.C. at 472, 478 S.E.2d at 94 (stating "a statutory employee['s] sole remedy for work-related injuries is to seek relief under the Workers' Compensation Act"); *cf. Llewellyn v. Smith,* 593 P.2d 771 (Okla.1979)

---

**2.** I disagree with Harrell's argument that Pineland has raised Hiers's status for the first time on appeal. In its reply memorandum in support of its motion to dismiss, reproduced in the record, Pineland argued before the trial court, and the trial court held, that "the employees of [Land Management] (including [Harrell]) who performed work for Pineland are statutory employees."

(holding even though an employee's immediate employer failed to secure compensation as required under the workers' compensation act, when the employee successfully pursued a workers' compensation claim against his principal employer, the employee made an election of remedies and, therefore, could not pursue a common-law negligence action against his immediate employer and court was without jurisdiction to consider the common-law negligence action).[3]

I would affirm.

---

3. I do not address Harrell's argument that he was not acting within the course and scope of his employment because I would construe section 42-1-540 to bar all actions against employers when personal injury to an employee comes within the Act and the employee has recovered under the Act. S.C.Code Ann. § 42-1-540 (1985); *see Boulware v. Mills*, 294 S.C. 24, 362 S.E.2d 184 (Ct.App.1987) (finding the court was not required to determine if the employee's injury arose out of and in the course of his employment because he had already received workers' compensation). It does not matter that the parties agreed on a settlement of Harrell's workers' compensation claim rather than litigating the claim before the commission. Once Pineland is found to be Harrell's statutory employer and Harrell is found to have elected his remedy, the inquiry ends. *See, e.g., Wheeler v. Morrison Mach. Co.*, 313 S.C. 440, 438 S.E.2d 264 (Ct.App.1993).

Because I do not address whether Harrell was acting within the course and scope of his employment, I need not address whether Harrell is judicially estopped to claim his injury did not occur within the course and scope of his employment. *See generally Hayne Fed. Credit Union v. Bailey*, 327 S.C. 242, 251, 489 S.E.2d 472, 477 (1997) (adopting the doctrine of judicial estoppel only "as it relates to matters of *fact* (not law)"); *Teledyne Indus., Inc. v. NLRB*, 911 F.2d 1214, 1219 (6th Cir.1990) (stating that "[s]ettlements, even in the form of an agreed order, ordinarily do not constitute judicial acceptance of whatever terms they contain"); *Konstantinidis v. Chen*, 626 F.2d 933, 939 (D.C.Cir.1980) (citations omitted) (finding a prior settlement approved by the workers' compensation commission does not signify the commission's endorsement of either party's position; therefore, judicial estoppel did not apply); *Scott v. Land Span Motor, Inc.*, 781 F.Supp. 1115 (D.S.C.1991) (refusing to apply judicial estoppel when plaintiff in a tort suit asserted an inconsistent position from one taken in a prior workers' compensation proceeding that was settled because there was no indication that plaintiff's position was adopted by the commission).