19644

Grady WILSON, Respondent, v. DANIEL INTERNATIONAL CORPORATION, Appellant

(197 S. E. (2d) 686)

*Messrs. Haynsworth, Perry, Bryant, Marion & Johnstone,* of Greenville, *for Appellant,*

*J. Brantley Phillips, Jr., Esq.,* of *Leatherwood, Walker, Todd & Mann,* Greenville, *for Respondent,*

*Messrs. Haynsworth, Perry, Bryant, Marion & Johnstone,* of Greenville, *for Appellant,* in Reply.

June 21, 1973.

BRAILSFORD, Justice:

The sole issue on this appeal is whether an employee of a ready-mixed concrete supplier, who, while making a delivery

of concrete on a job site, was injured by the negligence of an employee of the general contractor, may sue *in tort* for his injuries. The answer depends upon whether the concrete company is to be regarded as a supplier of material or as a subcontractor engaged in the execution or performance of part of the work undertaken by the contractor, within the meaning of Section 72-112, Code of 1962. If the latter, the injured employee is confined to his remedy under the Workmen's Compensation Act against either his actual employer or against the general contractor as his statutory employer. We agree with the circuit court that the Workmen's Compensation Act is inapplicable. The facts are virtually undisputed.

Winyah Concrete & Block Co., Inc., plaintiff's employer, accepted a purchase order to furnish to Daniel Construction Company, Inc., job requirements of ready-mixed concrete for construction contracted for by Daniel at Midrex Metalizing Plant, Georgetown, South Carolina. Winyah committed to firm prices for estimated requirements of 8,000 cubic yards delivered at the job site, as called for by Daniel, in mixer trucks manned only by a driver. The concrete was mixed at Winyah's plant and was delivered by pouring it into forms on the job site as requested by Daniel's employees. Before discharging concrete, the driver was required to maneuver the truck into position as instructed and let down an adjustable chute, which Daniel's employees would then position. Having done so, they would call for concrete, and the driver would discharge all or part of his load by reversing the rotation of the mixer drum. When the delivery was complete, the driver would wash out his mixer and return to his employer's plant. The processing of the concrete after delivery was done exclusively by Daniel. Plaintiff was injured by an unexpected movement of the discharge chute while it was being positioned by a Daniel's employee.

> Section 72-112 raises the employer-employee relationship for workmen's compensation purposes between the general contractor and the employees of a

subcontractor when the latter is engaged in the execution or performance of any part of the work undertaken by such general contractor. Subcontracting pervades the construction industry, and these indispensable arrangements, ordinarily, are readily recognizable. The impact of the statute is on employees engaged in work executed by subcontract. It is inapplicable to the relationship of buyer and seller of a commodity or material. *Pyett v. Marsh Plywood Corp.*, 240 S. C. 56, 124 S. E. (2d) 617 (1962); 99 C. J. S. Workmen's Compensation, § 107, p. 369 (1958).

Ready-mixed concrete has been a valuable building material widely available for many years. Because of its nature, it cannot be stockpiled, but must be delivered in mixer trucks as near to the point of application as possible and when the purchaser is ready to receive it. A sale of ready-mixed concrete necessarily contemplates delivery by the supplier, which is accomplished whenever possible by pouring the material from the mixer truck into forms and footings prepared at the construction site to conform to construction requirements. The transaction is essentially a sale and delivery, and the supplier is a materialman, not a subcontractor engaged in the execution of part of the work undertaken by the contractor. *Goldstein v. Acme Concrete Corporation*, Fla., 103 So. (2d) 202 (1958).

The claim that Winyah was a subcontractor is apparently an after-thought. The original purchase order issued by Daniel referred to Winyah as the *concrete vendor*. Winyah's acceptance was subject to *seller's* conditions. A letter from Winyah to Daniel of April 3, 1970, refers to the parties as *seller* and *purchaser*. In an amendment to the purchase order issued by Daniel, Winyah is designated as concrete *supplier*. While the terminology used by the parties is not controlling of their relationship, we believe that these designations are accurate and realistic.

Most Workmen's Compensation Acts have provisions of similar import to Sections 72-111 and 72-112. Few courts

have considered their applicability to employees of ready-mixed concrete companies. Daniel cites *Whitaker v. Douglas,* 179 Kan. 64, 292 P. (2d) 688 (1956), and *Preveneau v. E. A. Wilson Co.,* 353 Mass. 766, 233 N. E. (2d) 203 (1968), as sustaining its position. We find neither persuasive. The Kansas court in *Whitaker* simply held an employee of a ready-mixed concrete company to be the statutory employee of the general contractor without addressing what we regard as the controlling test, *i. e.,* whether the concrete company was a materialman or a subcontractor. Furthermore, the precedential value of this decision in the state of its origin is at least doubtful in view of the later decision in *Bendure v. Great Lakes Pipe Line Company,* 199 Kan. 696, 433 P. (2d) 558 (1967), which, without mention of *Whitaker,* applied the test which we find controlling in holding that the act did not apply to an employee of a steel beam fabricator who was injured while delivering its product to the construction site.

The terse judgment of the Massachusetts Court in *Preveneau* apparently turned on provisions of the Massachusetts law respecting reservation of common law rights and "common employment" which are not found in ours.

. On the other hand, plaintiff relies upon *Goldstein v. Acme Concrete Corporation,* Fla., 103 So. (2d) 202 (1958); *Doyle v. Missouri Valley Constructors, Inc.,* Colo., 288 F. Supp. 121 (1968); and *Hipp v. Sadler Materials Corporation,* Va., 211 Va. 710, 180 S. E. (2d) 501 (1971). In each of these cases it was held that a supplier of ready-mixed concrete is not a subcontractor but is a vendor, and that the relevant provisions of the compensation acts do not apply. For the reasons stated, we adopt this view.

> Daniel emphasizes that it had the choice of three methods of procuring concrete for this and other projects, *i. e.,* (1) purchase from an outside source, (2) purchase from its own concrete division and (3) mixing on job site. In this instance, a proposal was obtained

from Daniel's concrete division, and a Daniel's engineer estimated the cost of on-the-site mixing. Winyah was chosen as supplier because this method of procuring the concrete was the most economical. From the availability and occasional use of methods (2) and (3), Daniel concludes that Winyah in mixing and delivering concrete to it was engaged in the performance of work which was a part of Daniel's trade, business or occupation. Hence, Daniel was statutory employer under Section 72-111, which holds an "owner" liable for workmen's compensation benefits to the employees of a "subcontractor" engaged by the "owner" to execute or perform work which is part of the latter's trade, business or occupation. Since Daniel was general contractor on construction of which Midrex was owner, Section 72-111, the "owner" section, does not apply to this case. But even if Daniel be regarded as a Section 72-111 "owner," Winyah was not engaged in the execution or performance of any part of Daniel's work. As an independent vendor of ready-mixed concrete, it was engaged in its own work when it mixed and delivered its materials to Daniel or to any other customer.

Affirmed.

Moss, C. J., and LEWIS, BUSSEY and LITTLEJOHN, JJ., concur.