523 S.E.2d 766

**William R. HARRELL, Respondent,**

v.

**PINELAND PLANTATION, LTD., Petitioner,**

and

**Joseph Land and Company, Inc., Defendant.**

No. 25016.

Supreme Court of South Carolina.

Heard March 16, 1999.

Decided Nov. 22, 1999.

Rehearing Denied Dec. 14, 1999.

314

316

Bert G. Utsey, III, of Sinkler & Boyd, P.A., of Charleston, for petitioner.

Carl E. Pierce and Joseph C. Wilson, IV, both of Hood Law Firm, of Charleston; and John E. Parker, of Peters, Murdaugh, Parker, Eltzroth & Detrick, P.A., of Hampton, all for respondent.

Joseph H. McGee, of Charleston, for defendant.

TOAL, Justice:

This case involves a tort suit brought by respondent William Harrell ("Harrell") against petitioner Pineland Plantation, Ltd. ("Pineland"). The trial court dismissed Harrell's complaint. The Court of Appeals reversed and remanded the case for trial. Pineland appeals the decision of the Court of Appeals. We affirm in result.

## Factual/Procedural Background

Pineland is a California limited partnership. Haynes Kendall ("Kendall") is Pineland's general partner. Pineland's only enterprise is ownership and operation of a 275–acre plantation in Colleton County that Kendall maintains as a vacation resort. Pineland has never realized any profit from renting the site for hunting or recreational purposes. Kendall uses the plantation as a second home for his own entertainment and to host non-paying friends and family. Kendall has also used Pineland as a tax write-off.

Pineland contracted with Folk Land Management, Inc. ("Folk") to run Pineland's daily operations and maintain the plantation. Beginning in 1990, Harrell was the Folk employee that supervised all the work on Pineland plantation. Harrell's duties at the plantation included supervising the maintenance of the land and equipment, planning timber harvests, managing wildlife for hunting purposes, and entertaining guests of the plantation. Harrell also assisted Pineland in creating a marketing plan for the plantation. As promotion for the plantation, Harrell hosted a non-paying travel agent at the resort. Pineland also developed a marketing brochure and other commercial literature.

On July 23, 1993, Kendall was staying at Pineland and asked Harrell to prepare the plantation for a party to include Kendall and his family and friends. No paying guests would attend the party. In preparation for the evening, Harrell did general yard-work, graded the dirt road leading to the house, and organized food for the evening's guests. Kendall also asked Harrell to attend the party with his wife and two children. While waiting for more guests to arrive, Kendall and Harrell threw a baseball together and decided to accompany Harrell's and Kendall's children in swimming in a pond on the property.

The pond on the plantation contained a rope-swing going out over the water. Harrell used the swing several times to dive into the water. On one attempt, Harrell fell into the pond's shallow-end and broke his neck. As a result of the accident, Harrell is a quadriplegic with no mobility from the chest down.

Following his injury, Harrell filed a workers' compensation claim against Folk. The parties settled the claim for $1.1 million. The Workers' Compensation Commission approved the settlement. Harrell then brought this tort action against Pineland alleging negligence. The trial court dismissed Harrell's complaint under Rule 12(b)(1), SCRCP, finding that: (1) it lacked subject matter jurisdiction due to the exclusive remedy provision of the Workers' Compensation Act (the "Act"); and (2) Harrell could not deny his activities were under the Act because he had previously recovered workers' compensation from Folk. Harrell appealed the judge's rulings.

A three-judge panel of the Court of Appeals issued three separate opinions concerning Harrell's case. *See Harrell v. Pineland Plantation, Ltd.,* 329 S.C. 185, 494 S.E.2d 123 (Ct.App.1997). Judge Connor wrote the lead opinion and concluded that Pineland was not engaged as a business at the time of Harrell's injury and, thus, could not qualify as a statutory employer. Judge Connor also found that even if Pineland were a business, it could not qualify for the exclusivity defense because Pineland failed to secure workers' compensation insurance or the payment of workers' compensation as required by the Act.

Judges Cureton and Goolsby disagreed with Connor's determination that Pineland was not operating as a business. Judge Cureton, however, agreed with Judge Connor that due to Pineland's failure to purchase workers' compensation insurance for itself, it was not entitled to the protection of the exclusivity provision. In addition, Judge Cureton found that Pineland was not entitled to the exclusivity defense because at the time of his accident, Harrell was not performing work that was part of the "trade, business, or occupation" of Pineland.

In his dissent, Judge Goolsby found that Pineland operated as a business and was Harrell's statutory employer. Judge Goolsby further concluded that Pineland should have been afforded tort immunity under the Act because Folk carried workers' compensation insurance at the time of the injury. As a result, two judges concluded that Harrell could sue Pineland in an action at law and reversed the rulings of the trial court. *See Harrell,* 329 S.C. 185, 494 S.E.2d 123. This Court granted a writ of certiorari to consider the following issues:

1. Was Pineland engaged in a business at the time of Harrell's accident?

2. In a statutory employment analysis, is the focus on the specific activity of the worker at the time of an injury or on the general services and activities performed by the subcontractor?

3. Was Pineland Harrell's statutory employer under the Act?

4. Was Pineland immune from a tort suit by Harrell due to the exclusive remedy provision of the Workers' Compensation Act even though it did not purchase its own Workers' Compensation coverage or otherwise qualify as self-insured under the Act?

## LAW/ANALYSIS

■ The determination of whether a worker is a statutory employee is jurisdictional and therefore the question on appeal is one of law. *Glass v. Dow Chemical Co.*, 325 S.C. 198, 482 S.E.2d 49 (1997). As a result, this Court has the power and duty to review the entire record and decide the jurisdictional facts in accord with the preponderance of the evidence. *Id.*

## I. "STATUTORY EMPLOYER" STATUS

The initial question before this Court is whether Pineland has "owner" liability under S.C.Code Ann. § 42–1–400 (1976). If so, Pineland would be deemed Harrell's "statutory employer" and liable for workers' compensation. *See Parker v. Williams & Madjanik, Inc.*, 275 S.C. 65, 267 S.E.2d 524 (1980)(holding that an owner, in effect, becomes the employee's statutory employer, even though in law the owner is not the immediate employer of the injured worker). Section 42–1–400 provides:

When any person, in this section and §§ 42–1–420 and 42–1–430 referred to as "owner," undertakes to perform or execute any work which is a part of his trade, business or occupation and contracts with any other person (in this section and §§ 42–1–420 to 42–1–450 referred to as "subcontractor") for the execution or performance by or under such subcontractor of the whole or any part of the work undertaken by such owner, the owner shall be liable to pay to any

workman employed in the work any compensation under this Title which he would have been liable to pay if the workman had been immediately employed by him.

Under this section, the Court must make two determinations in assessing whether owner workers' compensation liability will attach to Pineland: First, Pineland must qualify as a business under the Act. Second, Harrell's work must have constituted part of Pineland's "trade, business, or occupation."

## A. Pineland as a Business

 Harrell asserts that Pineland was not a business at the time of his injury and therefore could not qualify as a statutory employer. We disagree.

Since the enactment of workers' compensation statutes, courts have given the word business "its ordinary and popular meaning." 4 Arthur Larson, Workers' Compensation Law § 50.22 (1998). For the purposes of workers' compensation, "[t]he test is not whether the employer is in business for profit, but whether the employer is in business at all. If he supplies a product or service, it is immaterial what he does with his profits, or whether he expects or gets any profits at all." *Id.* at § 50.44(a). Pineland operated as a vacation resort and provided this service to Pineland's owner, Kendall. Folk supplied the necessary labor to run Pineland and was responsible for entertaining the guests of the plantation, including Kendall. Harrell's job as an employee of Folk was to run the plantation for Pineland. Even though Pineland had not made any profit from renting to others at the time of Harrell's injury, that fact alone does not prevent Pineland from qualifying as a business for purposes of our workers' compensation law. Profit from the enterprise is not a condition precedent to liability for compensation.

## B. Harrell's Work as Part of Pineland's "trade, business, or occupation"

 Initially, the "trade, business, or occupation" analysis focuses on the work the owner has employed the subcontractor to complete. *See Boone v. Huntington and Guerry Elec. Co.*, 311 S.C. 550, 552, 430 S.E.2d 507, 508 (1993)("[W]hen an owner contracts with a subcontractor to perform or execute

any work which is a part of his trade, business, or occupation, the subcontractor becomes a 'statutory employee' of the owner for the purposes of workers' compensation liability."). Whatever the parties contract to call their relationship is not controlling in a statutory employment analysis. *See* S.C.Code Ann. § 42–1–610 (1985)("No contract or agreement, written or implied, and no rule, regulation or other device shall in any manner operate to relieve any employer, in whole or in part, of any obligation created by this Title except as otherwise expressly provided in this Title."); *see also Wilson v. Daniel Intern. Corp.*, 260 S.C. 548, 197 S.E.2d 686 (1973)(stating that the terminology used by the parties is not controlling of their relationship).

■ To determine if there is a statutory employment relationship, this Court has established three tests based on S.C.Code Ann. § 42–1–400 (1976). Owners are statutory employers for injuries related to activities that:

(1) are an important part of the trade or business of the employer;

(2) are a necessary, essential, and integral part of the business of the employer; or

(3) have been previously performed by employees of the employer.

*Glass v. Dow Chemical Co.*, 325 S.C. 198, 201, 482 S.E.2d 49, 50 (1997). Owners are treated as statutory employers in these situations because an owner should not be able to avoid workers' compensation liability by subcontracting out the work of their business.[1]

---

1. As noted by the Court in *Marchbanks v. Duke Power Co.*, 190 S.C. 336, 343–344, 2 S.E.2d 825, 828 (1939):

It was evidently realized by the General Assembly that it would not be fair to relieve the owner of compensation to employees doing work which was a part of his trade or business by permitting such owner to sub-let or sub-contract some part of said work. Doubtless in many instances such contractor would be financially irresponsible, or the number of employees under him would be so small, as in this case, that such contractor would not be required under the Act to carry compensation insurance. It was therefore, provided under the first paragraph that where such work in which the employee was engaged was a part of the owner's trade or business, the owner would be

■ The *Glass* tests differentiate between work done for an owner where it would be unfair to allow the owner to escape compensation responsibility and work provided to the business that would be outside the policy of the statutory section.[2] In making this determination, "it is often a matter of extreme difficulty to decide whether the work in a given case falls within the designation of the statute. It is in each case largely a question of degree and of fact." *Marchbanks*, 190 S.C. at 350–51, 2 S.E.2d at 828. When the *Glass* analysis establishes that the subcontractor's work for the owner was a part of the owner's trade, business, or occupation, then the employees of the subcontractor *doing that work* are the owner's statutory employees and any injury will be reviewed for workers' compensation coverage. Employees who work for the subcontractor but are not employed to do the work that the owner would normally do would not have a statutory employment relationship with the owner.

■ Once the determination is made that there is a statutory employment relationship, the second step in the analysis is to treat the statutory employee as a direct employee of the owner to determine if workers' compensation is appropriate. In order for an employee, whether direct or statutory, to be entitled to workers' compensation benefits, he must show that he sustained an "injury by accident arising out of and in the course of the employment." S.C.Code Ann. § 42–1–160 (1985). The phrase "arising out of" in the workers' compensation statute refers to the origin of the cause of the accident. *See Bickley v. South Carolina Elec. & Gas Co.*,

---

responsible in compensation to all employees doing such work, whether employees of an independent contractor or not.

**2.** On this point, *Marchbanks* offers the following illustration:

[I]f a merchant wished to construct an apartment house, the General Assembly did not desire to hold him responsible in compensation for injuries to employees of the contractor to whom the contract had been awarded for the construction of such an apartment house. However, the General Assembly did intend under such circumstances to give some measure of protection to employees of any sub-contractor under such contractor. By the second paragraph it was intended that where the work was not a part of the owner's trade or business, the principal contractor would be liable in compensation to all employees of sub-contractors doing such work.

*Marchbanks*, 190 S.C. at 344, 2 S.E.2d at 828.

259 S.C. 463, 192 S.E.2d 866 (1972). "An injury arises out of employment when there is apparent to the rational mind, upon consideration of all the circumstances, a causal relationship between the conditions under which the work is to be performed and the resulting injury." *Owings v. Anderson County Sheriff's Dep't*, 315 S.C. 297, 299, 433 S.E.2d 869, 871 (1993). This second step, the analysis of whether the injury arises out of and in the course of the employment, is where the focus is on the individual activity of the worker with respect to the injury.

Harrell's argument that the focus should be solely on the activity of the worker at the time the injury collapses our two step analysis into one. If the Court adopted Harrell's approach, employees of a subcontractor would constantly move in and out of workers' compensation coverage throughout the workday based on the type of work they were engaged in at that very moment.[3]

Turning to the facts of the instant case, we find that Pineland was Harrell's statutory employer. As discussed above, the first step of the statutory employment analysis involves determining if the work the owner has employed the

---

**3.** An owner could subcontract out all of his work, as Pineland did, and greatly avoid any compensation responsibility. Under such an approach, a business that uses all subcontractors would not be liable for any workers' compensation coverage except for those specific acts that alone would rise to the level of the *Glass* analysis. The General Assembly's desire to prevent a business from avoiding the responsibility for workers' compensation by subcontracting out the work would be greatly frustrated by such a position. Such a rule would also exclude many workers and employers from the Act's coverage, which is against this Court's policy. *See Baggott v. Southern Music, Inc.*, 330 S.C. 1, 5, 496 S.E.2d 852, 854 (1998)(recognizing this Court's policy "to construe the Workers' Compensation Act in favor of coverage rather than exclusion.").

For example, two employees of Folk working on the plantation are injured. One is injured while mowing the grass. The second employee slips and falls on his way to the bathroom during a work break. Both could recover workers' compensation from Folk as their direct employer, but the second employee would then be able to sue Pineland in tort because his walking to the bathroom was not "a part of the owner's trade, business or occupation" that could meet any test set forth in *Glass*. Furthermore, and an even less desirable result, Pineland would be immune from a workers' compensation claim by the second employee, even if the subcontractor failed to provide coverage.

subcontractor to complete is "a part of his trade, business or occupation." S.C.Code Ann. § 42–1–400. Focusing on the responsibilities Folk had in relation to Pineland, both the "important part of the trade or business" test and the "necessary, essential, and integral part of the business" test are met. Folk maintained every aspect of the daily operations of the plantation. Without the work of Folk and Harrell, Pineland would have had to hire direct employees to complete those duties. Their relationship is exactly the type that the statutory employer theory is meant to cover. *See Carter v. Florentine Corp.*, 310 S.C. 228, 423 S.E.2d 112 (1992)(finding that an absentee landlord that hired a management company to run its only property was a statutory employer).

Harrell argues that he was not the statutory employee of Pineland because entertaining the non-paying boss of Pineland and his friends could not meet any of the tests put forth in *Glass*. As discussed above, the important factor is the relationship between the work Folk has been hired to do for Pineland and that work's relationship to the business of Pineland. Preparing the plantation and entertaining guests is specifically what Folk and Harrell were hired to do for Pineland, it does not matter in this analysis that Kendall was Pineland's owner.

For an injury to be covered by the Act it must have occurred by an accident "arising out of and in the course of the employment." S.C.Code Ann. § 42–1–160 (1985). Harrell has admitted that part of his job at Folk was to entertain the guests of Pineland, including Kendall. In light of the circumstances surrounding Harrell's accident, his injury falls under the Act.

## II. "STATUTORY EMPLOYER" IMMUNITY

Pineland argues that the Court of Appeals erred in holding that it could not claim immunity under the Act because it did not provide any form of workers' compensation insurance. We disagree.

When an employee and his or her employer accept the provisions of the Act, the employee's remedies under the Act exclude all other rights and remedies of the employee.

S.C.Code Ann. § 42–1–540 (1985).[4] This section is known as the exclusive remedy provision, and it shrouds an employer with immunity from any actions at law instituted by the employee. Such immunity is part of the broader *quid pro quo* arrangement imposed upon the employer and employee by the Act. The employee "receives the right to swift and sure compensation" in exchange for giving up the right to sue in tort; the employer receives such tort immunity in exchange for complying with those provisions of the Act that insure swift and sure compensation for the employee. *Parker v. Williams and Madjanik, Inc.*, 275 S.C. 65, 70, 267 S.E.2d 524, 526 (1980) ("This *quid pro quo* approach to workmens' compensation has worked to the advantage of society as well as the employee and employer.").

The Act achieves such "swift and sure compensation" by requiring the employer to secure the payment of compensation under S.C.Code Ann. § 42–5–10 (1985). Section 42–5–10 provides: "Every employer who accepts the compensation provisions of this Title shall secure the payment of compensation to his employees in the manner provided in this chapter." S.C.Code Ann. § 42–5–10. The very next section of the Act, section 42–5–20, prescribes how an employer must secure such compensation:

> Every employer who accepts the provisions of this title relative to the payment of compensation shall insure and keep insured his liability thereunder in any authorized corporation, association, organization, or mutual insurance association formed by a group of employers so authorized or shall furnish to the commission satisfactory proof of his financial ability to pay directly the compensation in the amount and manner and when due as provided for in this title. The commission may, under such rules and regulations as it may prescribe, permit two or more employers in

---

**4.** Section 42–1–540 provides in pertinent part:

The rights and remedies granted by this Title to an employee when he and his employer have accepted the provisions of this Title, respectively, to pay and accept compensation on account of personal injury or death by accident, shall exclude all other rights and remedies of such employee, his personal representative, parents, dependents or next of kin as against his employer, at common law or otherwise, on account of such injury, loss of service or death.

S.C.Code Ann. § 42–1–540 (1985).

businesses of a similar nature to enter into agreements to pool their liabilities under the Workers' Compensation Law for the purpose of qualifying as self-insurers.

S.C.Code Ann. § 42–5–20 (Supp.1998).

An employer who refuses or neglects to secure such compensation becomes liable either under the Act or in an action at law. S.C.Code Ann. § 42–5–40 (1985). Thus, an employer who fails to secure the payment of compensation as prescribed in section 42–5–20 loses its immunity under the Act's exclusive remedy provision. *See* 6 Arthur Larson, Workers' Compensation Law, § 67.22 (1998) ("A common exception to the exclusiveness of the compensation remedy is the right of suit against an employer who fails to secure his compensation liability by taking out insurance or qualifying as a self-insured.").

Pineland makes the argument that, as an "owner," it may avoid the obligation of an employer to secure compensation, while at the same time retaining an employer's tort immunity under the Act's exclusive remedy provision. The plain language of our Act clearly does not support Pineland's position.

As discussed above, when the elements of section 42–1–400 are satisfied, an owner, in effect, becomes the employee's "statutory employer," even though in law the owner is not the immediate employer of the injured worker. *Parker v. Williams & Madjanik, Inc.,* 275 S.C. 65, 267 S.E.2d 524 (1980); *Marchbanks v. Duke Power Co.,* 190 S.C. 336, 2 S.E.2d 825 (1939). In other words, an owner is equated to an employer for purposes of the Act. This Court's first important decision on the subject of statutory employment was *Marchbanks v. Duke Power Co.,* 190 S.C. 336, 2 S.E.2d 825 (1939). In *Marchbanks,* Duke Power contracted with an individual to paint 170 of its metal poles located around Greenville. This individual in turn hired Marchbanks to assist in the operation. Marchbanks was subsequently injured while painting one of the poles. He brought a suit in tort against the owner, Duke Power. This Court held that Marchbanks' exclusive remedy against Duke Power, as his statutory employer, was through workers' compensation. The Court noted that Duke Power had accepted the provisions of the Act and, with the approval of the commission, became a carrier of its

own insurance thereby securing the payment of compensation. The Court concluded that Duke Power was entitled to tort immunity under the Act's exclusive remedy provision.

 The purpose of statutory employer immunity is to protect employees of direct employers who are financially irresponsible. *Younginer v. J.A. Jones Constr. Co.*, 215 S.C. 135, 54 S.E.2d 545 (1949); *Marchbanks, supra.* Prior to the passage of S.C.Code Ann. § 42–1–415 (Supp.1998), discussed *infra,* a statutory employer had absolute liability to pay workers' compensation benefits. *Long v. Atlantic Homes,* 311 S.C. 237, 428 S.E.2d 711 (1993). Such liability was absolute because the injured employee could seek compensation from the statutory employer regardless whether the direct employer could pay. *Id.* at 240, 428 S.E.2d at 713 ("Section 42–1–410 does not expressly require proof of the immediate employer's failure to pay."). The statutory employer's liability was also secondary, not because liability arose only if the immediate employer failed to provide compensation, but because S .C.Code Ann. § 42–1–440 [5] allowed for indemnity from the immediate employer. *Id.* The end result was that the owner and the immediate employer were subjected to the requirements of the Act, and the employees received "double protection." *Id.* at 241, 428 S.E.2d at 713 (quoting *Parker,* 275 S.C. at 73, 267 S.E.2d at 528).

Pineland urges this Court to adopt an interpretation of the Act that would allow it to claim tort immunity without complying with the quintessential obligation imposed upon it by the Act—the duty to *secure* the payment of compensation. To accept Pineland's position would go against the clear mandates of the Act and overrule this Court's prior decisions which have consistently interpreted statutory employer liability as provid-

---

5. Section 42–1–440 provides in full:

When the principal contractor is liable to pay compensation under any of §§ 42–1–400 to 42–1–450, he shall be entitled to indemnity from any person who would have been liable to pay compensation to the workmen independently of such sections or from an intermediate contractor, and have a cause of action therefor.

A principal contractor when sued by a workman of a subcontractor shall have the right to call in that subcontractor or any intermediate contractor or contractors as defendant or codefendant.

ing "double protection" for employees. *See Long, supra; Parker, supra.*

The dissent mistakenly looks at Harrell's situation in hindsight. Denying a tort suit against Pineland because, as it turns out, Harrell successfully recovered some compensation from Folk ignores the policy behind requiring a statutory employer, as well as the direct employer, to secure payment of compensation in order to guarantee tort immunity. It is true that in this situation Harrell may recover in both tort and in workers' compensation. However, Harrell is recovering from two separate entities, each that owed him a responsibility to secure compensation.

The dissent relies on section 42–5–40's statement that an employer who fails to secure compensation becomes liable to an employee "either for compensation under this Title or at law" in an attempt to restrict the injured employee to one recovery under an "either/or" approach. This position ignores that Folk and Pineland are separate entities each with the responsibility to secure compensation. Harrell recovered workers' compensation from Folk only, not Pineland, and Pineland failed to live up to its compensation responsibilities *prior to* Harrell's accident. The dissent's position would allow the statutory employer to enjoy tort immunity under the Act even though it has done nothing to secure the payment of compensation to the injured worker. If Pineland had secured compensation, then it could have recovered any compensation payments made to Harrell from Folk as the direct employer. *See* S .C.Code Ann. § 42–1–440 (1976).

The dissent is correct that the Act prohibits an employee from recovering both workers' compensation and a tort judgment from an employer who fails to secure compensation. Nonetheless, this case presents the obligations and rights of two separate employers. The dissent makes the statement that "nothing in the Act entitles a claimant to recover *both* workers' compensation and tort judgment." However, nothing in the Act prohibits an employee from recovering both workers' compensation from one employer and tort damages from an upstream employer who failed to secure compensation. In fact, as discussed above, the plain language of the Act allows for such recovery.

Recent additions and amendments to the Act further support our holding on this matter. In 1996, the General Assembly added S.C.Code Ann. § 42–1–415 (Supp.1998), which was later amended in 1997. Under section 42–1–415(A), a statutory employer is no longer directly liable for workers' compensation payments whenever documentation is presented to the commission that a contractor or subcontractor represented himself to the statutory employer as having workers' compensation insurance.[6] Moreover, under section 42–1–415(D), a statutory employer retains any tort immunity it had prior to the passage of this section.[7] The result is that a statutory employer need not secure the payment of compensation to avail itself of tort immunity under the Act, if the requirements of section 42–1–415 are met. The important implication for the instant case is that prior to the passage of section 42–1–415 and its 1997 amendment, a statutory employer, in order to claim tort immunity, was required to secure the payment of compensation as prescribed in section 42–5–20. *See Vernon v. Harleysville Mut. Cas. Co.*, 244 S.C. 152, 135 S.E.2d 841 (1964) (in adopting amendment to a statute, the legislature is presumed to have intended to make some change in existing law).

---

**6.** Section 42–1–415(A) provides in pertinent part:

Notwithstanding any other provision of law, upon the submission of documentation to the commission that a contractor or subcontractor has represented himself to a higher tier subcontractor, contractor, or project owner as having workers' compensation insurance at the time the contractor or subcontractor was engaged to perform work, the higher tier subcontractor, contractor, or project owner must be relieved of any and all liability under this title except as specifically provided in this section. In the event that employer is uninsured, regardless of the number of employees that employer has, the higher tier subcontractor, contractor, project owner, or his insurance carrier shall in the first instance pay all benefits due under this title. The higher tier subcontractor, contractor, project owner, or his insurance carrier may petition the commission to transfer responsibility for continuing compensation and benefits to the Uninsured Employers' Fund....

S.C.Code Ann. § 42–1–415(A) (Supp.1998).

**7.** Section 42–1–415(D) provides: "However, nothing in this section shall be construed to abrogate the immunity to tort liability of any subcontractor under this title or any higher tier subcontractor, contractor, or project owner who may be considered a statutory employer as provided by sections 42–1–400, 42–1–410, 42–1–420, 42–1–430, and 42–1–450." S.C.Code Ann. § 42–1–415(D) (Supp.1998).

We therefore hold that Pineland may not avail itself of tort immunity under the Act's exclusive remedy provision because it failed to secure the payment of compensation as prescribed by the Act.

## CONCLUSION

Based on the foregoing, the Court of Appeals is **AFFIRMED IN RESULT.**

FINNEY, C.J., and BURNETT, J., concur.

MOORE and WALLER, JJ., dissenting in a separate opinion.

MOORE, Justice:

I disagree with the majority's conclusion that Pineland does not have immunity because it carried no workers' compensation insurance at the time of Harrell's injury. Accordingly, I respectfully dissent.

First, the majority concludes, and I agree, that Pineland is a statutory employer under § 42–1–400 which provides:

When any person, in this section and §§ 44–1–420 and 42–1–430 referred to as "owner," undertakes to perform or execute any work which is a part of his trade, business or occupation and contracts with any other person (in this section and §§ 42–1–420 to 42–1–450 referred to as "subcontractor") for the execution or performance by or under such subcontractor of the whole or any part of the work undertaken by such owner, *the owner shall be liable to pay to any workman employed in the work any compensation under this Title* which he would have been liable to pay if the workman had been immediately employed by him.

(emphasis added). Under § 42–1–400, an "owner" is liable as a matter of law to pay workers' compensation benefits to its statutory employees. *Parker v. Williams and Madjanik, Inc.,* 275 S.C. 65, 267 S.E.2d 524, 527 (1980). As the majority notes, a statutory employer has an "absolute liability" to pay workers' compensation benefits. *Long v. Atlantic Homes,* 311 S.C. 237, 428 S.E.2d 711, 713 (1993).[1] This obligation is not

---

1. This absolute liability was recently modified by the enactment of S.C.Code Ann. § 42–1–415(A) (Supp.1998) which provides for a specific

contingent upon whether the owner has workers' compensation insurance.

"One who has obligations under the Act enjoys the immunities under the Act." *Freeman Mechanical, Inc. v. J.W. Bateson Co.*, 316 S.C. 95, 447 S.E.2d 197, 199 (1994) (Toal, A.J.) (*citing* 2A ARTHUR LARSON, LARSON'S WORKMEN'S COMPENSATION LAW § 72.31 (1993)). The immunity granted by the Act parallels the liability imposed by the Act. *Neese v. Michelin Tire Corp.*, 324 S.C. 465, 478 S.E.2d 91 (Ct.App.1996) (*citing Freeman, supra*).

Pineland was obligated to pay workers' compensation under the Act as a statutory employer and therefore it enjoys tort immunity irrespective of the existence of insurance. Here, the claimant pursued and obtained workers' compensation from Pineland's subcontractor, Folk. As a statutory employer, Pineland shares the tort immunity of its subcontractor regardless of who actually paid the compensation. *Parker*, 267 S.E.2d at 528.

The majority attempts to support its position by applying to an owner the statutory requirement that an employer secure the payment of compensation under §§ 42–5–10 and –20 in order to enjoy tort immunity under the Act. As § 42–5–40 specifically provides, however, an employer who fails to secure compensation becomes liable to an employee *"either for compensation under this Title **or** at law."* (emphasis added). Thus, in a situation where an employer is uninsured, a claimant may pursue workers' compensation or, *in the alternative,* recovery in tort. Nothing in the Act entitles a claimant to recover *both* workers' compensation and a tort judgment.

In conclusion, I would reverse the Court of Appeals' decision and hold that Pineland is entitled to tort immunity as a statutory employer.

WALLER, J., concurs.

---

exemption to an owner's liability if the contractor or subcontractor has represented it has workers' compensation, unless the immediate employer is uninsured. Section 42–1–415(D) specifically provides, however, that this section shall not abrogate a statutory employer's tort immunity. Accordingly, the modification to an owner's absolute liability under this section does not impact my conclusion.