# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

Cathy J. Swicegood, Appellant,

v.

Polly A. Thompson, Respondent.

State Ex Rel Alan Wilson, Attorney General, Intervenor.

Appellate Case No. 2018-000008

―――――――――

Appeal From Greenville County
W. Marsh Robertson, Family Court Judge

―――――――――

Opinion No. 5735
Heard September 18, 2019 – Filed July 1, 2020

―――――――――

## AFFIRMED

―――――――――

John G. Reckenbeil, of Law Office of John G.
Reckenbeil, L.L.C., of Mauldin, and J. Falkner Wilkes,
of Greenville, for Appellant.

Margaret A. Chamberlain, of Chamberlain Law Firm,
LLC, of Greenville, and Melissa Hope Moore, of Law
Office of Melissa H. Moore, LLC, of Fountain Inn, for
Respondent.

Attorney General Alan McCrory Wilson, Solicitor
General Robert D. Cook, Deputy Solicitor General J.
Emory Smith, Jr., and Assistant Attorney General Ian
Parks Weschler, all of Columbia, for Intervenor.

**LOCKEMY, C.J.:**  In this appeal from the family court's dismissal of Cathy Swicegood's complaint alleging the existence of a common-law marriage with her same-sex partner, Polly Thompson, Swicegood argues the family court erred by dismissing the case for lack of subject matter jurisdiction.  We affirm.

## FACTS

In March 2014, Swicegood filed an action in family court seeking an order recognizing the existence of a common-law marriage, a decree of separate support and maintenance, alimony, equitable division of marital property, and related relief.  Swicegood alleged she and Thompson cohabited as sole domestic partners for over thirteen years until December 10, 2013, agreed to be married, and held themselves out publicly as a married couple.  She alleged the couple exchanged and wore wedding rings, co-owned property as joint tenants with the right of survivorship, included each other as devisees in their respective wills, and shared a joint bank account.  Swicegood further alleged Thompson listed her as a "domestic partner/qualified beneficiary" on Thompson's health insurance and as a beneficiary on her retirement account.

Thompson moved under Rule 12(b)(1) of the South Carolina Rules of Civil Procedure to dismiss the action, alleging the family court lacked subject matter jurisdiction over Swicegood's complaint because the parties were not married and lacked the capacity to marry.  In response, Swicegood filed a memorandum and several affidavits.  In her own affidavit, she attested Thompson proposed marriage to her on September 16, 2008, and the parties were declared married approximately two and a half years later during a ceremony in Las Vegas, Nevada on February 12, 2011.[1]  In addition, Swicegood submitted the affidavits of two individuals who each attested they witnessed a wedding ceremony between Swicegood and Thompson in Las Vegas on February 12, 2011.  Finally, Swicegood included the affidavit of a person who stated she spoke to Thompson a few weeks after the couple separated and Thompson said, "If our marriage was legal in South Carolina, I would be in a world of s--t."

---

[1] Until 2014, Nevada law prohibited same-sex marriage.  *See Latta v. Otter*, 771 F.3d 456, 464 (9th Cir. 2014) (holding Nevada's statute and constitutional amendment "preventing same-sex couples from marrying and refusing to recognize same-sex marriages validly performed elsewhere" to be unconstitutional).

Thompson likewise submitted a memorandum and several exhibits in support of her motion to dismiss. She argued that in August 2012 and September 2013, she and Swicegood signed affidavits of domestic partnership in which they acknowledged they had "a close personal relationship in lieu of a lawful marriage," were "unmarried" and "not married to anyone." Thompson contended these documents indicated the parties did not hold themselves out as a married couple. In her affidavit, Thompson attested Swicegood knew they were not married. She stated she and Swicegood participated in a "commitment ceremony" in Las Vegas "on a lark," but they knew it was not a wedding and that they could not legally marry in Nevada. Thompson attested she gave Swicegood several rings during their relationship, but she intended none of these to signify they were married. She stated she was not and never had been married to Swicegood: "We both knew that if we wanted to get married, we could go to a state that allowed same-sex marriage. It was not our intent to enter into marriage, and we did not." Thompson also stated she witnessed Swicegood marry another woman in a ceremony in 1995.

Thompson submitted the affidavits of several individuals. One affiant stated she was present at the ceremony in Las Vegas but characterized it as a commitment ceremony, not a wedding, and stated she never heard Thompson refer to Swicegood as her spouse. Two other affiants also attested Thompson never referred to Swicegood as her spouse or described their relationship as a marriage. Finally, a reverend attested he performed a "holy union" between Swicegood and another woman in 1995.

The family court dismissed Swicegood's complaint on May 7, 2014, concluding it lacked subject matter jurisdiction to adjudicate the issues because a common-law marriage was not legally possible pursuant to section 20-1-15 of the South Carolina Code (2014),[2] which was still in force at the time. Swicegood appealed. While Swicegood's appeal was pending, the Supreme Court of the United States decided *Obergefell v. Hodges*, in which it held "same-sex couples may exercise the fundamental right to marry," and the state laws challenged in that case were "invalid to the extent they exclude same-sex couples from civil marriage on the

[2] ("A marriage between persons of the same sex is void ab initio and against the public policy of this State."); *see also* S.C. Const. art. XVII, § 15 ("A marriage between one man and one woman is the only lawful domestic union that shall be valid or recognized in this State"); S.C. Code Ann. § 20-1-10 (2014) (stating "[a]ll persons, except . . . persons whose marriage is prohibited by this section, may lawfully contract matrimony"); *id.* (stating "[n]o man shall marry . . . another man" and "[n]o woman shall marry . . . another woman").

same terms and conditions as opposite-sex couples."[3]  135 S. Ct. 2584, 2604-05 (2015).  Consequently, this court issued an unpublished opinion remanding the case to the family court with instructions to "consider the implications of *Obergefell* on its subject matter jurisdiction."  *See Swicegood v. Thompson*, 2016-UP-013 (S.C. Ct. App. filed Jan. 13, 2016).

Upon remand, the family court directed the parties to brief the following questions: (1) whether *Obergefell* applied to common-law marriages and (2) whether *Obergefell* applied retroactively.[4]  After hearing argument on these questions, the family court again concluded it lacked subject matter jurisdiction over the matters raised in Swicegood's complaint, finding that although *Obergefell* applied to common-law marriages, it could not retroactively create a common-law marriage between Swicegood and Thompson.  The court concluded *Obergefell* could not "logically be read to exclude common-law marriages," and so long as South Carolina continued to recognize the validity of common-law marriages for opposite-sex couples, it had "a constitutionally mandated duty to recognize the validity of common-law marriages for same-sex couples."  The court did not expressly resolve the question of whether *Obergefell* applied retroactively, but it concluded the couple could not have formed a common-law marriage because section 20-1-15 was in place throughout the couple's thirteen-year period of cohabitation, and they believed they lacked the legal right to be a married couple during that time.  The court, therefore, concluded the couple could not have formed the requisite intention and mutual agreement to be married.  Additionally, the family court concluded that even assuming Swicegood and Thompson cohabited with an actual intent and mutual agreement to be married, section 20-1-15 acted as a legal impediment to the creation of a common-law marriage between them.  The court therefore concluded the couple could not have formed such marriage unless they renewed their intention and agreement to be married after the *Obergefell* decision triggered the removal of the impediment.  Accordingly, the family court

---

[3] Earlier, on November 20, 2014, the U.S. District Court struck down South Carolina's ban on same-sex marriage as unconstitutional.  *Condon v. Haley*, 21 F. Supp. 3d 572, 587 (D.S.C. 2014) (holding "to the extent they seek to prohibit the marriage of same[-]sex couples who otherwise meet all other legal requirements for marriage in South Carolina," South Carolina's statutory and constitutional provisions prohibiting same-sex marriage "unconstitutionally infringe on the rights of [the p]laintiffs under the Due Process Clause and Equal Protection Clause of the Fourteenth Amendment of the United States Constitution and are invalid as a matter of law").

[4] The family court also approved a consent order allowing the State to intervene.

reaffirmed its dismissal based on lack of subject matter jurisdiction pursuant to Rule 12(b)(1), SCRCP. This appeal followed.

## STANDARD OF REVIEW

"The question of subject matter jurisdiction is a question of law." *Porter v. Labor Depot*, 372 S.C. 560, 567, 643 S.E.2d 96, 100 (Ct. App. 2007). Likewise, "[w]hether a common-law marriage exists is a question of law." *Callen v. Callen*, 365 S.C. 618, 623, 620 S.E.2d 59, 62 (2005). "This Court reviews all questions of law de novo." *Fesmire v. Digh*, 385 S.C. 296, 302, 683 S.E.2d 803, 807 (Ct. App. 2009); *see also Harrell v. Pineland Plantation, Ltd.*, 337 S.C. 313, 320, 523 S.E.2d 766, 769 (1999) ("[T]his Court has the power and duty to review the entire record and decide the jurisdictional facts in accord with the preponderance of the evidence."). "[A]ffidavits and other evidence outside the pleadings may, in certain circumstances, be considered in support of a motion to dismiss based on lack of jurisdiction." *Baird v. Charleston County*, 333 S.C. 519, 529, 511 S.E.2d 69, 74 (1999).

## LAW/ANALYSIS

### I. Impediment

Swicegood acknowledges that when she and Thompson formed an intent and mutual agreement to treat each other as spouses, section 20-1-15 was considered to present an impediment to marriage and this "perceived impediment" continued to exist throughout the relationship until they separated. She contends, however, section 20-1-15 could not have functioned as an impediment because *Obergefell* removed the impediment as a matter of constitutional law and the removal of the impediment acted retroactively. Swicegood asserts the prohibition of same-sex marriage could not have precluded the parties from forming a common-law marriage as a matter of law because unconstitutional laws are void ab initio, which requires our courts to treat such laws as if they never existed. She argues that if the parties formed intent and mutual agreement to treat each other as spouses under the common law, their marriage would be valid notwithstanding it occurred prior to *Obergefell* and in light of *Obergefell*, the existence of a valid common-law marriage would not be precluded as a matter of law. We disagree.

"Subject-matter jurisdiction is the 'power to hear and determine cases of the general class to which the proceedings in question belong.'" *Coon v. Coon*, 364 S.C. 563, 566, 614 S.E.2d 616, 617 (2005) (quoting *Dove v. Gold Kist*, 314 S.C.

235, 237-38, 442 S.E.2d 598, 600 (1994)).  The family court has jurisdiction to hear and determine matters relating to common-law marriage.  *See* S.C. Code Ann. § 63-3-530(B) (2010) (stating "the family court and the probate court have concurrent jurisdiction to hear and determine matters relating to . . . common-law marriage . . . except that the concurrent jurisdiction of the probate court extends only to matters dealing with the estate, trust, and guardianship and conservatorship actions before the probate court"); *see also Bell v. Progressive Direct Ins. Co.*, 407 S.C. 565, 582 n.9, 757 S.E.2d 399, 407 n.9 (2014) (noting the family court has exclusive jurisdiction to determine the existence of a common-law marriage when the ultimate issue is the existence of a common-law marriage rather than heirship).  If no common-law marriage existed between the parties, the family court lacked subject matter jurisdiction to hear any other matters Swicegood raised in her complaint.  *See* S.C. Code Ann. § 63-3-530(A)(2) (2010) ("The family court has exclusive jurisdiction . . . to hear and determine actions for divorce a vinculo matrimonii, separate support and maintenance, legal separation, and in other marital litigation between the parties, and for settlement of all legal and equitable rights of the parties in the actions in and to the real and personal property of the marriage . . . .").  Thus, it was necessary for the court to first determine whether a common-law marriage existed.

"A common-law marriage is formed when two parties contract to be married." *Callen*, 365 S.C. at 624, 620 S.E.2d at 62.  "A valid common[-]law marriage requires that the facts and circumstances show an intention on the part of both parties to enter into a marriage contract, usually evidenced by a public and unequivocal declaration by the parties." *Owens v. Owens*, 320 S.C. 543, 545, 466 S.E.2d 373, 375 (Ct. App. 1996).  "The fact finder is to look for mutual assent: the intent of each party to be married to the other and a mutual understanding of each party's intent." *Callen*, 365 S.C. at 624, 620 S.E.2d at 62.

> When, however, there is an impediment to marriage, such as one party's existing marriage to a third person, no common-law marriage may be formed, regardless whether mutual assent is present.  Further, after the impediment is removed, the relationship is not automatically transformed into a common-law marriage.  Instead, it is presumed that relationship remains non-marital.

*Id.*  "[F]or a common[-]law marriage to arise, the parties must agree to enter into a common[-]law marriage after the impediment is removed, though such agreement

may be gathered from the conduct of the parties." *Yarbrough v. Yarbrough*, 280 S.C. 546, 551, 314 S.E.2d 16, 19 (Ct. App. 1984). Although much of our decisional law regarding impediments involves bigamous relationships, in *Callen*, our supreme court held an impediment to common-law marriage existed due to the couple's residency in jurisdictions that did not recognize common-law marriage. *Id.* at 624-25, 620 S.E.2d at 63. Our supreme court held that due to the couple's residency in such jurisdictions until the couple moved to South Carolina, there was an impediment to the marriage, and "no common-law marriage could have been formed, if at all, until after the move." *Id.* Thus, our courts have recognized an impediment to marriage outside of the context of a bigamous relationship.

In *Obergefell*, the United States Supreme Court held,

> [T]he right to marry is a fundamental right inherent in the liberty of the person, and under the Due Process and Equal Protection Clauses of the Fourteenth Amendment couples of the same-sex may not be deprived of that right and that liberty. The Court now holds that same-sex couples may exercise the fundamental right to marry. No longer may this liberty be denied to them. *Baker v. Nelson*[5] must be and now is overruled, and the State laws challenged by Petitioners in these cases are now held invalid to the extent they exclude same-sex couples from civil marriage on the same terms and conditions as opposite-sex couples.

135 S. Ct. at 2604-05.[6] *Obergefell* did not expressly instruct state courts in whether to apply its holding prospectively or retrospectively. However, the United States Supreme Court applies a general rule of retroactivity. *See Solem v. Stumes*, 465 U.S. 638, 642 (1984) ("As a rule, judicial decisions apply 'retroactively.'" (quoting *Robinson v. Neil*, 409 U.S. 505, 507-08 (1973))); *see also Ranolls v. Dewling*, 223 F. Supp. 3d 613, 619 (E.D. Tex. 2016) ("Generally, in both civil and criminal cases, unconstitutional laws and rules are void *ab initio*, or void from

---

[5] 409 U.S. 810 (1972) (holding, in a summary decision, the exclusion of same-sex couples from marriage did not present a substantial federal question).

[6] As we noted, the U.S. District Court for the District of South Carolina struck down South Carolina's statutory and constitutional provisions prohibiting same-sex marriage on November 20, 2014. *See Condon*, 21 F. Supp. 3d at 587.

inception, as if they never existed."); *id.* (noting that "[o]ver the years, the Supreme Court has issued a series of decisions addressing retroactivity and its limitations").

In *Harper v. Virginia Department of Taxation*, the Court expressly repudiated selective application of new rules based on the equities of a particular case. 509 U.S. 86, 95-97 (1993). The Court first acknowledged it previously "permitted the denial of retroactive effect to 'a new principle of law'" in civil cases "if such a limitation would avoid 'injustice or hardship' without unduly undermining the 'purpose and effect' of the new rule." *Id.* at 94-95 (quoting *Chevron Oil Co. v. Huson*, 404 U.S. at 106-07 (1971))). The Court then announced,

> We now prohibit the erection of selective temporal barriers to the application of federal law in noncriminal cases. In both civil and criminal cases, we can scarcely permit "the substantive law [to] shift and spring" according to "the particular equities of [individual parties'] claims" of actual reliance on an old rule and of harm from a retroactive application of the new rule.

*Id.* at 97 (alterations in original) (quoting *James B. Beam Distilling Co. v. Georgia*, 501 U.S. 529, 543 (1991)); *see also Reynoldsville Casket Co. v. Hyde*, 514 U.S. 749, 752 (1995) (acknowledging *Harper* overruled *Chevron Oil* "insofar as the case (selectively) permitted the prospective-only application of a new rule of law"). The Court adopted the following rule in *Harper*:

> When [the Supreme Court] applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review and as to all events, regardless of whether such events predate or postdate our announcement of the rule.

509 U.S. at 97; *see also Reynoldsville Casket Co.*, 514 U.S. at 752 (acknowledging the Court's holding in *Harper* that "when (1) the Court decides a case and applies the (new) legal rule of that case to the parties before it, then (2) it and other courts must treat that same (new) legal rule as 'retroactive,' applying it, for example, to all pending cases, whether or not those cases involve predecision events").

Several jurisdictions that have recognized informal or common-law marriages have applied *Obergefell* retroactively to find litigants were entitled to establish

common-law marriages even when such marriages were created and ended—either by death or separation—before *Obergefell* was decided. *See In re Marriage of Hogsett & Neale*, 2018 COA 176, ¶ 24 ("In states like Colorado that recognize common[-]law marriage, retroactive application of *Obergefell* means that same-sex couples must be accorded the same right as opposite-sex couples to prove a common[-]law marriage even when the alleged conduct establishing the marriage pre-dates *Obergefell*."), *cert. granted in part,* 2019 WL 4751467 (Colo. 2019) (granting certiorari in part to consider whether the court of appeals erred in affirming the trial court's finding that no common-law marriage existed); *Gill v. Nostrand*, 206 A.3d 869, 874-75 (D.C. 2019) ("We now expressly recognize . . . that a same-sex couple may enter into common-law marriage in the District of Columbia and that this rule applies retroactively. Thus, the trial court was correct in ruling that 'a party in a same-sex relationship must be given the opportunity to prove a common[-]law marriage, even at a time when same-sex marriage was not legal . . . .'"); *Ranolls*, 223 F. Supp. 3d 613 (holding *Obergefell* applied retroactively to allow the partner of the decedent in a wrongful death case to assert a claim as an alleged common-law spouse even though the decedent died prior to the *Obergefell* decision and there was a genuine issue of material fact as to the couple's marital status at the time of the decedent's death, making summary judgment inappropriate); *In re Estate of Carter*, 159 A.3d 970, 972 (Pa. Super. Ct. 2017) (holding "the United States Constitution mandates that same-sex couples have the same right to prove a common[-]law marriage as do opposite-sex couples" notwithstanding the alleged spouse died before *Obergefell* was decided).

Our review of United States Supreme Court decisional law compels the conclusion *Obergefell* must be applied retroactively. *See Harper*, 509 U.S. at 100 ("The Supremacy Clause . . . does not allow federal retroactivity doctrine to be supplanted by the invocation of a contrary approach to retroactivity under state law. Whatever freedom state courts may enjoy to limit the retroactive operation of their own interpretations of state law . . . cannot extend to their interpretations of federal law."); *see also Am. Trucking Ass'ns, Inc. v. Smith*, 496 U.S. 167, 177 (1990) (plurality opinion) ("The determination whether a constitutional decision of [the United States Supreme] Court is retroactive—that is, whether the decision applies to conduct or events that occurred before the date of the decision—is a matter of federal law. When questions of state law are at issue, state courts generally have the authority to determine the retroactivity of their own decisions.").

Nevertheless, the Supreme Court has noted, "[A]s courts apply 'retroactively' a new rule of law to pending cases, they will find instances where that new rule, for well-established legal reasons, does not determine the outcome of the case."

*Reynoldsville Casket Co.*, 514 U.S. at 758-59.  Because we found federal law requires us to apply *Obergefell* retroactively, the question we now consider is whether the family court's finding that the prohibition on same-sex marriage acted as an impediment is an appropriate independent legal basis under South Carolina law to affirm its decision.  *See id.* at 76 (noting such well-established legal reasons may include "a pre-existing, separate, independent rule of state law, having nothing to do with retroactivity").

Swicegood urges us to apply the reasoning the Superior Court of Pennsylvania applied in *Carter*, 159 A.3d 970.  We decline to do so.  There, the court reversed the trial court's holding that it was legally impossible for a same-sex couple to have entered into a common-law marriage before common-law marriages were abolished in Pennsylvania because, at the time, it was not legal for same-sex couples to enter into a common-law marriage.  *Id.* at 977.  Pennsylvania's legislature abolished common-law marriage effective January 1, 2005, but its marriage laws permitted "the legal recognition of common-law marriages contracted before January 1, 2005."  *Id.* at 974.  In *Carter*, the appellant alleged he and his same-sex partner, who died before *Obergefell* was decided, had previously entered into a common-law marriage.  *Id.* at 972-73.  The superior court held because state laws prohibiting same-sex couples from marrying had been declared unconstitutional, such laws could not preclude a same-sex couple from establishing the existence of a pre-2005 common-law marriage.  *Id.* at 977-78.  Although the court applied *Obergefell* retroactively, it did not consider the question of whether the statute prohibiting same-sex marriage acted as an impediment prior to its invalidation.  Thus, we find *Carter* does not assist us in deciding the matter at issue in this case.

Conversely, Thompson argues *In re Estate of Leyton*, 22 N.Y.S.3d 422 (N.Y. App. Div. 2016), supports her argument *Obergefell* does not require this court to "reach back in time and find a legal marriage existed" when South Carolina did not recognize such marriages.  In *Leyton*, a decedent's family member filed a petition to disqualify his same-sex partner, Hunter, as the executor and beneficiary under his will, arguing Hunter was a "former spouse" under the former spouse provisions of New York's probate law.  *Id.* at 423.  Hunter and the decedent participated in a "Commitment Ceremony" in 2002 and informally separated in 2010 without undergoing any kind of "dissolution ceremony analogous to the commitment ceremony."  *Id.*  New York did not recognize same-sex marriage until 2011.  *Id.*  The appellate court affirmed the trial court's denial of the petition and stated *Obergefell* "d[id] not compel a retroactive declaration that the 'Commitment Ceremony' entered into by decedent and Hunter in 2002, when same-sex marriage

was not recognized under New York law, was a legally valid marriage for purposes of the 'former spouse' provisions." *Id.* It further opined, "Even assuming that [their] . . . union should be retroactively recognized as having constituted a legal marriage, in order for [the statute's] 'former spouse' provisions to apply, the end of the marital relationship must have been effected by a formal judicial 'decree or judgment.'" *Id.* The court concluded Hunter should not be disqualified as the executor or beneficiary because there was no formal judicial divorce decree and he was therefore not a former spouse. *Id. Leyton* is distinguishable and of little guidance here. New York does not recognize common-law marriages. *See In re Mott v. Duncan Petroleum Transp.*, 414 N.E.2d 657, 658 (N.Y. 1980) (noting New York state law did not recognize common-law marriages unless the marriage was validly contracted in another state that sanctioned common-law marriage). Thus, there was no basis for the appellate court to validate the couple's commitment ceremony.

We find the family court did not err by determining section 20-1-15 constituted an impediment to the formation of a common-law marriage between Swicegood and Thompson. Here, for the duration of the parties' relationship, South Carolina prohibited same-sex marriage. *See* § 20-1-15 ("A marriage between persons of the same sex is void ab initio and against the public policy of this State."). Both parties acknowledged this fact in their pleadings. Pursuant to the Court's holding in *Obergefell*, section 20-1-15 is unconstitutional and no longer valid law. *See Obergefell*, 135 S. Ct. at 2604-05 (holding the state laws at issue in that case were "invalid to the extent they exclude same-sex couples from civil marriage on the same terms and conditions as opposite-sex couples"). Nevertheless, because the statute was in effect during the time Swicegood alleges the parties formed a common-law marriage, it acted as an impediment, which prevented them from creating a valid marriage. *See Callen*, 365 S.C. at 624, 620 S.E.2d at 62 ("When . . . there is an impediment to marriage . . . no common-law marriage may be formed, regardless whether mutual assent is present. Further, after the impediment is removed, the relationship is not automatically transformed into a common-law marriage. Instead, it is presumed that relationship remains non-marital."); *Yarbrough*, 280 S.C. at 551, 314 S.E.2d at 19 ("In order for a common[-]law marriage to arise, the parties must agree to enter into a common[-]law marriage after the impediment is removed, though such agreement may be gathered from the conduct of the parties.").

Although we must apply *Obergefell* retroactively, retroactive application of the decision does not require us to ignore the fact the law operated as an impediment to the formation of a common-law marriage between same-sex couples when it was

still in force.  Our state law concerning impediments to marriage is "a pre-existing, separate, independent rule of state law, having nothing to do with retroactivity," which formed an "independent legal basis" for the family court's dismissal of Swicegood's complaint.  *See Reynoldsville Casket Co.*, 514 U.S. at 757-59 (noting a court may find "a previously existing, independent legal basis . . . for denying relief" such that the new rule, despite retroactivity, does not determine the outcome of the case).  Our state laws prohibiting same-sex marriage constituted an impediment to the formation of a common-law marriage until the impediment was removed.  As with any impediment to marriage, Swicegood and Thompson were required to enter into a new agreement to be married *after* the removal of the impediment, either by way of participating in a civil ceremony or by renewing their agreement to assume a marital relationship.

To determine whether the impediment prevented Swicegood and Thompson from forming a common-law marriage as a matter of law, we must first determine when the removal of the impediment occurred.  The family court found the impediment remained in place until the *Obergefell* decision and declined to consider whether the date of the *Condon* decision was relevant to its analysis.  Although the parties do not directly address this point on appeal, Thompson acknowledges South Carolina began recognizing same-sex marriages on November 20, 2014—the date *Condon* went into effect.  Because the impediment to the marriage was the existence of South Carolina's laws prohibiting same-sex marriage, we find the earliest date upon which the removal of the impediment could have occurred was November 20, 2014, when the U.S. District Court struck down those laws.  *See Condon*, 21 F. Supp. 3d at 587.  Here, it is undisputed the parties' relationship ended and they ceased cohabiting in 2013.  Under these circumstances, the parties could not have formed a common-law marriage because they did not renew their agreement to be married after the removal of the impediment.  Accordingly, we find the family court did not err by dismissing the matter for lack of subject matter jurisdiction.

We emphasize our decision is limited to only those circumstances under which neither party disputes the alleged marital relationship ended prior to November 20, 2014.  When a purported spouse brings an action in family court to establish the existence of a common-law marriage with a person of the same sex and neither party disputes the relationship ended before November 20, 2014, the couple could not have formed a common-law marriage as a matter of law.

## II. Intent

Swicegood contends the family court erred by finding the parties lacked intent as a matter of law because the question of intent and mutual agreement is a question of fact distinct from the issue of whether an impediment prevented the marriage from having legal effect.  We disagree.

"Whether a common-law marriage exists is a question of law."  *Callen*, 365 S.C. at 624, 620 S.E.2d at 62.  "A common-law marriage is formed when two parties contract to be married."  *Id.*  "A valid common[-]law marriage requires that the facts and circumstances show an intention on the part of both parties to enter into a marriage contract, usually evidenced by a public and unequivocal declaration by the parties."  *Owens*, 320 S.C. at 545, 466 S.E.2d at 375.

> The fact finder is to look for mutual assent: the intent of each party to be married to the other and a mutual understanding of each party's intent.  Consideration is the participation in the marriage.  If these factual elements are present, then the court should find as a matter of law that a common-law marriage exists.

*Callen*, 365 S.C. at 624, 620 S.E.2d at 62.  "A party . . . must at least know that his actions will render him married as that word is commonly understood."  *Id.* at 626, 620 S.E.2d at 63.  "If a party does not comprehend that his 'intentions and actions' will bind him in a 'legally binding marital relationship,' then he lacks intent to be married."  *Id.*  "The proponent of the alleged marriage has the burden of proving the elements by a preponderance of the evidence."  *Id.* at 623, 620 S.E.2d at 62; *but see Stone v. Thompson*, 428 S.C. 79, 89, 833 S.E.2d 266, 271 (2019) (holding the burden of proof is now clear and convincing evidence in cases filed after July 24, 2019).

Although Swicegood asserts she and Thompson agreed to live as a married couple, both parties acknowledged in their pleadings that section 20-1-15 presented a barrier to marriage throughout their relationship.  Because they acknowledge their awareness that this law prevented them from marrying in this state during their relationship, we find Swicegood and Thompson could not have formed the intent and mutual agreement to enter a legally binding marital relationship.  *See Callen*, 365 S.C. at 626, 620 S.E.2d at 63.  Accordingly, we find the family court did not err by concluding Swicegood and Thompson could not have formed the requisite intention and agreement to be married as a matter of law.

**CONCLUSION**

Consistent with the Supreme Court's opinion in *Obergefell*, we hold section 20-1-15 is unconstitutional and is no longer valid law. We hold the *Obergefell* decision must be applied retroactively. Nevertheless, the law acted as an impediment to marriage during the time it was still in effect. Therefore, the parties were required to renew their agreement to marry after the removal of the impediment. Because the parties' relationship ended before South Carolina's prohibition of same-sex marriage was struck down, they could not have formed a common-law marriage as a matter of law. Moreover, because the parties acknowledge they knew they could not legally marry in this state during the entirety of their relationship, they could not have formed the intent and mutual agreement to enter a legally binding marital relationship. Based on the foregoing, the family court's dismissal of Swicegood's complaint for lack of subject matter jurisdiction is

**AFFIRMED.**

**HUFF, J., concurs.**

**HILL, J., concurring in result:**

I agree with the majority that federal law requires *Obergefell* to be applied retroactively. I also agree we are bound by *Callen*, which holds that "[i]f a party does not comprehend that his intentions and actions will bind him in a legally binding marital relationship, then he lacks intent to be married." *Callen*, 365 S.C. at 626, 620 S.E.2d at 63 (quotations removed). I therefore concur in the result the majority reaches.